W. H. CASADY and FRANK L. MOORE, Appellants, v.
WARREN F. SCOTT and ANNA GERTRUDE
SCOTT, His Wife (*née* ANNA GERTRUDE RAN-
DOLPH), A. N. DYER and A. S. HARDY, Executors
of the Last Will and Testament of WALLACE
SCOTT, Deceased, REBECCA SCOTT, RALPH
SCOTT, JAMES SCOTT and CALISTA HUXTABLE,
Respondents.

[237 Pac. 415.]

CONTRACT TO DEVISE OR BEQUEATH PROPERTY—WHEN ENFORCEABLE
AGAINST ESTATE OF TESTATOR—ASSIGNMENT OF INTEREST IN CON-
TRACT—RIGHT OF ASSIGNOR—NOT CLAIM AGAINST ESTATE OF
TESTATOR—ASSIGNMENT OF POSSIBILITIES AND EXPECTANCIES—
WHEN EQUITY WILL ENFORCE TRANSFER—GENERAL DEMURRER—
DENIED WHEN FACTS PLEADED SHOW SOME RIGHT OF RECOVERY.

1. A valid contract may be made, for a valuable consideration,
to devise or bequeath property by a last will, in a certain speci-
fied way and in a specific amount, and in the event of a breach
of such contract the promisee injured by such breach has an
action at law to recover the damages caused by such breach of the
promisor.

2. In some cases the promisee may be compelled to resort to
equity for a recovery, but this may be done only where the
circumstances are such that an action at law would be inadequate
and the case is one within the well-settled principles relative to
the proper exercise of equitable jurisdiction.

3. Where a father agreed, for a valuable consideration, to
make a bequest or devise to his foster-son of $175,000, and,
contemporaneous with such agreement, the son attempted to
assign a one-half interest in this contract, or in the expectancy
so promised, to his attorneys in consideration for their services

Publisher's Note.

1. Measure of damages for breach of contract to make will, see
note in Ann. Cas. 1918A, 854.

2. Specific performance of contract to make will, see notes in
Ann. Cas. 1914A, 399; Ann. Cas. 1918A, 1191.

3. Effect of assignment of expectancy, see notes in 37 Am. Dec.
128; 56 Am. St. 339; Ann. Cas. 1916E, 1241, 1259, 1263, 1267.

rendered him in procuring the same, and thereafter the father and son mutually agreed that their contract should be abrogated and a new one was made between them whereby the son was to receive, upon the death of the father, a smaller bequest and the immediate conveyance to him of certain real estate, *held*, that the son's assignees took no interest, by reason of the assignment, that would enable them to maintain an action against the execu-tors of the father's estate after his death for damages because of the abrogation of such agreement between the father and son, since the agreement related to an expectancy and they were not in privity with the promisor.

4. One who promises to leave at his death to another a spe-cific bequest or devise out of his estate, although such promise is for a valuable consideration, does not thereby convey to or vest in such promisee an interest in his estate that he may con-vey to a third party not in privity with the promisor upon which such third party can maintain an action against the promisor's estate after his death, since nothing vested by such transaction and no cause of action could arise upon such promise until after its breach, which could not occur until the death of the promisor.

5. A claim arising by reason of an attempted assignment or transfer of a half interest in and to an expectancy growing out of a promise to the assignor that a bequest or devise will be left to him upon the death of the promisor does not give the assignee, not in privity with the promisor, a claim against his estate, within the meaning of that term as it is used in C. S., secs. 7581, 7582 and 7585, since it is not a right arising out of an assignment of a thing in action, and the claimant is not required to present the same to the administrator or executor of the deceased promisor, his right being one enforceable only in equity against the interest of the promisee after the expec-tancy has vested.

6. Where one, for a valuable consideration, agreed to devise or bequeath to his son a specific part of his property but before his death he and the son mutually agreed to cancel the agree-ment, and the promisor, instead of leaving him the amount first agreed upon, bequeathed a lesser sum, an assignee of the interest first agreed to be left may, in equity, impress that part of the estate with a proportionate interest in that which was actually left, after the same has vested in the promisee.

7. By the ancient common law things in action, expectancies, possibilities and the like were not assignable; an assignee thereof acquired no right which was recognized by the courts of law, such assignment being regarded as against public policy, but courts of chancery rejected this rule and held that one might

bind himself to do anything not impossible, and that upon doing so he would be required to perform his obligation, if it were not illegal.

8. Equity has always held that the assignment of a thing in action for a valuable consideration, should be enforced, and has given effect to assignments of every kind of future and con-tingent interests or possibilities in real or personal property, when made upon a valuable consideration, and as soon as the assigned expectancy or possibility has fallen into possession the assignment will be enforced.

9. In equity the assignee of an ordinary thing in action— a debt or demand arising out of a contract—acquires at once an equitable ownership therein, while the assignee of an expec-tancy, possibility or contingency acquires at once a present equi-table right over the future proceeds of such expectancy as soon as they come into possession by transformation of the possibility or contingency into an interest in possession. The assignment creates an equitable ownership or property in abeyance which changes into an absolute property upon the happening of the future event.

10. An assignment of a thing in action at common law per-mitted the assignee to sue in the name of the assignor and to have entire control of the action and the judgment, and treated him as the only person having an immediate interest in the recovery, and the assignee, having a complete remedy, the necessity of a resort to equity ceased.

11. The reformed procedure now requires that whenever a thing in action is assigned the assignee must sue in his own name, or, as stated in the code, every action must be prosecuted in the name of the real party in interest, and this includes all things in action which survive and pass to the personal repre-sentative of a decedent creditor as assets or continue as liabili-ties against the representatives of a decedent debtor

12. A legal assignment of a mere naked possibility or ex-pectancy, not coupled with an interest, has never been recognized, but the assignment of a future contingent expected interest and possibilities are recognized and upheld in equity.

13. Possibilities or expectancies, although not coupled with a present interest, are assignable in equity for a valuable con-sideration; and equity will enforce the assignment when the possibility or expectancy has changed into a vested interest or possession.

14. There being but one form of civil action in this state, a plaintiff may recover if his complaint states any cause of action entitling him to relief at law or in equity. It is not

essential that a complaint state a cause of action for the relief which plaintiff seeks, provided the facts show some right of recovery, and a party cannot be thrown out of court merely because he may have misconceived the form of relief to which he is entitled, although, generally, where the complaint shows a right of recovery, the pleading should be amended to conform to the cause of action as it actually exists.

APPEAL from the District Court of the Tenth Judicial District, for Idaho County. Hon. Ed. L. Bryan, Presiding Judge.

Action to impress a bequest or devise with equitable lien. Judgment sustaining demurrers to plaintiffs' third amended complaint and dismissing their action. *Reversed and remanded*, with instructions.

W. H. Casady and Frank L. Moore, for Appellants.

The statute does not prescribe any particular form in which claims against the estate of a deceased person shall be stated, nor contemplate that the technical rules of pleading shall be observed in presenting them. It is not essential that a claim should recite the facts upon which it is predicated with the preciseness and particularity of a complaint, although it should sufficiently indicate the nature and amount of the demand to enable the representatives of the deceased and the judge of the probate court to act advisedly upon it. The facts may be stated in general terms and if the claim is rejected and action thereon is brought, it is enough if it appears that the suit is founded upon the same demand as that presented to the representatives of the deceased for allowance. (C. S., sec. 7582; *Pollitz v. Wickersham,* 150 Cal. 238, 88 Pac. 911; *McGrath v. Carroll,* 110 Cal. 79, 42 Pac. 466; *Lichtenberg v. McGlynn,* 105 Cal. 45, 38 Pac. 541; *Smith v. Furnish,* 70 Cal. 424, 12 Pac. 392; *Western States Life Ins. Co. v. Lockwood,* 166 Cal. 185, 135 Pac. 496; *Doolittle v. McConnell,* 178 Cal. 697, 174 Pac. 305; *Sime v. Hunter,* 50 Cal. App. 629, 195 Pac. 935; *Goltra v. Penland,* 42 Or. 18, 69 Pac. 925; *Tharp v. Jackson,* 85 Or. 78, 165 Pac. 585, 1173; *Harwood v. Scott,* 57 Mont. 83,

186 Pac. 693; *Hamilton v. Blakeney*, 65 Okl. 154, 165 Pac. 141; *Parkes v. Burkhart*, 101 Wash. 659, 172 Pac. 908; *Crist v. Tallman*, 190 Iowa, 1248, 179 N. W. 522; *White v. Deering*, 38 Cal. App. 516, 179 Pac. 401; *Elizalde v. Murphy*, 163 Cal. 681, 126 Pac. 978; *Thompson v. Koeller*, 183 Cal. 476, 191 Pac. 927.)

An assignment of a part or portion of a debt or of property to be acquired *in futuro*, with notice to the obligor, will create in the assignee, a primary, equitable right, which will support an action against the obligor to recover the interest of the assignee. (Pomeroy's Eq. Jur., 4th ed., secs. 702, 1280, 1281 and 1283, and cases cited under these sections.)

James E. Babb, for Respondent James Scott.

"Every action must be prosecuted in the name of the real party in interest." (*Brumback v. Oldham*, 1 Ida. 709; sec. 368, Kerr's Code Civ. Proc., 2d ed., 1920, and many cases, pars. 143–148 and 163–165 of note.)

A suit for a fractional interest in a claim assigned is a suit at law, and recovery thereon may be had at law. (5 C. J., p. 1000, and notes 93, 94.)

The cause of action set forth in the third amended complaint is a claim upon a contract against the deceased's estate, which should have been presented to the executors. (*Rice v. Rigley*, 7 Ida. 115, 129, 61 Pac. 290.)

"Where the specific sum to be recovered is nominated in the written contract and the said sum is the whole thing to be delivered and recovered, under any judgment to be entered, the case is one where there is ample remedy at law for the recovery of such sum." (*Morrison v. Land*, 169 Cal. 580, 147 Pac. 259.)

This claim, whether equitable or legal, "arises" upon the contract. (*Weirich v. Mansfield Lumber Co.*, 96 Ohio St. 386, 117 N. E. 362; *Stanford Hotel Co. v. M. Schwind Co.*, 180 Cal. 348, 181 Pac. 780.)

Even if the right to reinstate action on the claim presented to executors is not barred, the case must fail because (a) the claim does not set forth the nature of same as re-

quired. (b) If it does, there is no complaint setting up state of facts, supporting the claim—the complaint, being a total departure from the claim presented, and not setting up a claim presented pleaded in the complaint. (*Flynn v. Driscoll*, 38 Ida. 545, 223 Pac. 524; *Vanderpool v. Vanderpool*, 48 Mont. 448, 138 Pac. 772; *Hurley v. Farnsworth*, 107 Me. 306, 78 Atl. 291; *Etchas v. Orena*, 127 Cal. 588, 60 Pac. 45; *Stockton Savings Bank v. McCown*, 170 Cal. 600, 150 Pac. 985.)

James F. Ailshie, for Respondents A. N. Dyer and A. S. Hardy, Executors.

All claims against the estate of a deceased person arising upon contract must be presented to the administrator or executor for allowance before an action can be maintained thereon. (C. S., secs. 7581, 7582, 7585; *McGrath v. Carroll*, 110 Cal. 79, 42 Pac. 466; *Brooks v. Lawson*, 136 Cal. 10, 68 Pac. 97; *Vanderpool v. Vanderpool*, 48 Mont. 448, 138 Pac. 772; *Dakota Nat. Bank v. Kleinchmidt*, 33 S. D. 132, 144 N. W. 934; *Rice v. Rigley*, 7 Ida. 115, 61 Pac. 290; *Martin v. Smith*, 33 Ida. 692, 197 Pac. 823; *Flynn v. Driscoll*, 38 Ida. 545, 223 Pac. 524.)

The claims as presented to the executors are the foundation of plaintiff's cause of action and they cannot come into court and allege and prove any other or different cause of action from that stated in their claim. (*Etchas v. Orena*, 127 Cal. 588, 60 Pac. 45; *Giles v. Reed*, 44 Cal. App. 367, 186 Pac. 614; *Faulkner v. Hendy*, 123 Cal. 467, 56 Pac. 99; *Bechtel v. Chase*, 156 Cal. 707, 106 Pac. 81; *Grubb v. Chase*, 158 Cal. 352, 111 Pac. 90; *Branch v. Lambert*, 103 Or. 423, 205 Pac. 995; *Eidinger v. Sigwart*, 13 Cal. App. 667, 110 Pac. 521; *Morehouse v. Morehouse*, 148 Cal. 88, 73 Pac. 738; *Zuhn v. Horst*, 100 Wash. 359, 170 Pac. 1033; *Burnett v. Neraal*, 67 Mont. 189, 214 Pac. 955; *Gordon-Tiger M. & R. Co. v. Loomer*, 50 Colo. 409, 115 Pac. 717; *Flynn v. Driscoll, supra.*)

It is essential to an action for breach of contract to pay a debt by making provision by will in such person's favor

that a claim against the estate be presented thereon showing the existence of the contract and its breach by failure to make provision in the will for such compensation. (*Morrison v. Land,* 169 Cal. 580, 147 Pac. 259; *Ruble v. Richardson,* 188 Cal. 150, 204 Pac. 572; *Warner v. Warner,* 158 Cal. 441, 111 Pac. 352; *Barthe v. Rogers,* 127 Cal. 52, 59 Pac. 310; *Zellner v. Wassman,* 184 Cal. 80, 193 Pac. 84.)

Where a claim presented is founded upon a written instrument the claim must state that fact and the writing, or a copy thereof, must accompany the claim. (*Burnett v. Neraal, supra; In re Turner's Estate,* 128 Cal. 388, 60 Pac. 967; *Evans v. Johnston,* 115 Cal. 180, 46 Pac. 906; *State v. Johnson,* 26 Mont. 9, 66 Pac. 290.)

A complaint which does not expressly allege that the claim has been presented to the executors fails to state a cause of action against the estate. (*Morse v. Steele,* 146 Cal. 303, 86 Pac. 693; *Burke v. Maguire,* 154 Cal. 456, 98 Pac. 21; *Flynn v. Driscoll, supra.*)

An action for a money judgment against an estate for breach of contract to leave by will a specified sum of money is a simple action at law and involves no trust or trust estate. (*Morrison v. Land, supra; Owens v. McNally,* 113 Cal. 444, 45 Pac. 710, 33 L. R. A. 369; *Flood v. Templeton,* 148 Cal. 374, 83 Pac. 148; *Stellmacher v. Bruder,* 89 Minn. 507, 99 Am. St. 609, 95 N. W. 324; *Cooper v. Colson,* 66 N. J. Eq. 328, 105 Am. St. 660, 58 Atl. 337; *Matter v. Simons,* 247 U. S. 231, 38 Sup. Ct. 497, 62 L. ed. 1094; *Zillner v. Wassman, supra; Hoyt v. Thomas,* 50 Cal. App. 329, 195 Pac. 260; Id., 58 Cal. App. 14, 207 Pac. 1038.)

The assignee of a chose in action stands in the shoes of the assignor and acquires no greater or different right than his assignor had in the thing assigned. (2 Am. & Eng. Ency. of Law, 1079.)

Wilbur L. Campbell, for Respondent Warren F. Scott.

Frank E. Fogg, for Respondent Anna Gertrude Scott.

Respondents Rebecca Scott, Ralph Scott and Calista Huxtable, *in personam.*

WILLIAM A. LEE, J.—This is an appeal from a judgment dismissing appellants' action, on the ground that their third amended complaint fails to state facts sufficient to constitute a cause of action. The action was begun February 7, 1921, and after a motion to strike parts of the complaint and demurrers thereto, which preliminary pleas were in part sustained, appellants asked leave and were granted permission to file an amended complaint which was filed June 24, 1921. Respondents demurred to this amended complaint and appellants filed a second amended complaint, to which demurrers were interposed and sustained, and the third amended complaint, upon which the judgment of dismissal was had, filed July 22, 1922. The allegations of the third amended complaint, briefly stated, are: That at all times mentioned in the complaint, until the seventeenth day of March, 1910, Wallace Scott and Mary E. Scott were husband and wife residing in Nez Perce and Idaho counties, Idaho, and that respondent Warren F. Scott was their adopted son; that Mary E. Scott died on March 17, 1910, and left as her sole surviving heirs her husband, Wallace Scott, and her said adopted son; that she left an estate of inheritance consisting of her interest in the community property of herself and husband, of which Warren F. Scott became the owner at her death; that about June 23, 1910, Wallace Scott procured from Warren F. Scott an assignment of all of his interest in the estate of his deceased foster mother; that May 29, 1911, Wallace Scott procured from Warren F. Scott and his wife, Rose King Scott, a conveyance in writing of all of their right, title and interest of every kind whatsoever in and to the estate of the said Mary E. Scott; that May 12, 1911, Wallace Scott began probating the estate of Mary E. Scott to procure the distribution of said estate to him. It is further alleged that appellants are attorneys at law and were employed about December, 1916, by Warren F. Scott to take proper legal proceedings to recover the interest which Warren F. Scott had in his mother's estate, and that an action was commenced in the United States district court to set aside said assign-

ments and recover for the said Warren F. Scott his interest in the estate of his deceased foster-mother; that February 26, 1918, the action was compromised and settled by the defendant Wallace Scott agreeing to pay to his adopted son $30,000 and at his death to leave Warren F. Scott $175,000. A copy of this stipulation is set forth as an exhibit to this complaint, and the suit in the federal court was thereupon dismissed. That prior to such dismissal Warren F. Scott agreed in writing with appellants to pay them for their services one-half of all money that he might receive from the estate of his father, Wallace Scott, and assigned a one-half interest under the agreement with his father to them, and that they notified Wallace Scott to this effect. A copy of this agreement of Warren F. Scott with appellants is made a part of the complaint. That on October 30, 1918, respondent Warren F. Scott and Wallace Scott fraudulently entered into an agreement to cheat and defraud appellants of their interest in said $175,000 to be left to respondent Warren F. Scott upon the death of Wallace Scott, whereby said agreement to leave Warren F. Scott said $175,000 was canceled, relinquished and released by Wallace Scott paying to Warren a less sum and conveying to him an undivided interest in and to certain described real estate. It is also alleged that Wallace Scott, during all of this time after the making of these agreements, held in trust for appellants one-half of the money which he had agreed, upon his death, to leave Warren F. Scott; that Warren F. Scott and Anna Gertrude Scott, then Anna Gertrude Randolph, entered into an agreement whereby the said Warren F. Scott conveyed to the said Anna Gertrude Randolph all the property he had acquired or expected to acquire from his foster-father, Wallace Scott, and on the same day the two intermarried and are now husband and wife; and that appellants did not discover said fraud until the sixteenth day of December thereafter.

It is further alleged that on October 6, 1919, the said Wallace Scott died testate and did not leave to Warren F. Scott, as he had agreed to do, the said $175,000, or any

other or greater sum than $86,510, and that respondents Dyer and Hardy were named as executors of the last will and testament of the said Wallace Scott, deceased, and gave notice to the creditors on January 8, 1920, that the estate of the said deceased Wallace Scott had been appraised at the sum of $519,062, and that by the terms of said will respondent Warren F. Scott received $86,510, and that other special legacies aggregated $76,500, and the residue of the estate, of about $356,000, was devised to respondents Rebecca Scott, Ralph Scott, James Scott and Calista Huxtable; that no distribution of the estate has been made, and that respondents Dyer and Hardy, as executors, are holding said estate in trust for those entitled to the same. This complaint further alleges that to permit a distribution of said estate to the residuary legatees named in the will of the deceased, Wallace Scott, would wrong, cheat and defraud appellants of their interest in and to one-half of said $175,000 by them acquired by virtue of their agreement with Warren F. Scott of February 27, 1918; that on March 23, 1922, respondents agreed to a distribution of the residue of the estate of Wallace Scott whereby Warren F. Scott and his wife, Anna Gertrude Scott, were to receive a one-fifth portion of said residue, and that such agreement was made to enable the said Warren F. Scott to acquire and obtain the sum of $175,000, which the said Wallace Scott agreed to leave to him, in order to wrong, cheat and defraud appellants of their interest therein; that on October 23, 1920, appellants presented their claim to said executors, duly verified, with copies of the agreement between Wallace Scott and Warren F. Scott, entered into February 26, 1918, and the agreement entered into between appellants and respondent Warren F. Scott February 27, 1918.

The foregoing is a condensation of the material facts pleaded upon which appellants rely for a recovery in this action. The record on this appeal contains the original complaint and sets out *haec verba* the three complaints which were thereafter filed, it having been deemed necessary to put into this record all of these former pleadings, in

order to show, as we understand, a complete history of appellants' several efforts to state the facts upon which they rely for a recovery in such manner that the complaint would not be vulnerable to the motions and demurrers filed against former complaints, and they now insist that, notwithstanding they have upon these several occasions filed amended pleadings, any one of the complaints does state a cause of action on their behalf.

Where a complaint has been amended upon the application of the pleader ordinarily only the last one relied upon need be considered, and all former pleadings which it purports to amend become obsolete. (*Ryan v. Old Veteran Mining Co.*, 35 Ida. 637, 207 Pac. 1076; *Armstrong v. Henderson*, 16 Ida. 566, 102 Pac. 361; *Andrews v. Moore*, 14 Ida. 465, 94 Pac. 579; *Wooddy v. Jamieson*, 4 Ida. 448, 40 Pac. 61; *People v. Hunt*, 1 Ida. 433; *Condon Nat. Bank v. Rogers*, 60 Or. 189, Ann. Cas. 1914A, 101, 118 Pac. 846.)

In the instant case the ultimate facts upon which appellants rely for a recovery, as set forth in each of their several pleadings, and which constitute their cause of action, if they have one, is the transaction had between the deceased, Wallace Scott, during his lifetime, and his adopted son, Warren F. Scott, whereby Wallace Scott, in consideration of the compromise and settlement of the suit which the son had instituted against him in the federal court to recover his portion of his mother's estate, agreed to leave at his death to his son, Warren F. Scott, $175,000; the assignment of a one-half interest therein to appellants for their services as Warren F. Scott's attorneys; the subsequent abrogation of this agreement by the parties to it; and the failure of Wallace Scott to make such specific bequest.

Before commencing this action appellants filed with the executors of the estate of Wallace Scott a claim which, omitting the verification, is as follows:

"The undersigned creditors of Wallace Scott, deceased, present their claim against the estate of said deceased, with the necessary vouchers for approval, as follows, to wit:

"Estate of Wallace Scott, Deceased.

"To W. H. Casady and Frank Moore, Dr.

"To settlement and compromise of suit in the District Court of the United States, for the District of Idaho, Central Division, in which Warren F. Scott was plaintiff and Wallace Scott, now deceased, was defendant; the same being compromised on Feb. 26th, 1918.................$87,500."

Soon after filing this claim appellants sent by mail to the executors copies of the said several agreements made a part of this third amended complaint, and upon the executors' rejecting the claim they commenced this action, within three months thereafter.

Appellants' assignments of error are all predicated upon the ruling of the court that this complaint does not state a cause of action. The holding of the trial court is based upon its conclusion that there is a fatal variance between the claim presented to the executors and the claim which is the basis of this action; that when the claim presented is considered in conjunction with the allegations of the complaint it shows that it was for services rendered to Warren F. Scott and that the cause of action set forth in this complaint is against the estate of Wallace Scott upon an assignment of a one-half interest of the amount Wallace Scott agreed to leave at his death to Warren F. Scott.

Respondents exhaustively argue, and cite many authorities in support of their contention, that a claim against an estate, as that term is used in C. S., secs. 7581, 7582 and 7585, must first be presented to the executor, and when founded on a bond, bill, note or any other instrument, a copy of such instrument must accompany the claim and the original instrument must be exhibited if demanded unless it be lost or destroyed, and upon its rejection by the executor, claimant must bring an action to enforce the same in the proper court within the time prescribed by the statute; that since the basis upon which this cause is founded is the agreement of Wallace Scott to leave to his son Warren the bequest of $175,000 and the subsequent assignment

of a one-half interest in this bequest to appellants by War-
ren, the only remedy that the son could have invoked
against his father's estate for a breach of the agreement
would be an action at law for damages, and appellants are
necessarily limited to the same remedy.

Without an extended consideration of these questions,
some of which were considered in *Flynn v. Driscoll*, 38 Ida.
545, 223 Pac. 524, it is sufficient to say that appellants have
not complied with the requirements of the statute for the
enforcement of a claim against the estate of the deceased,
if it arises upon a claim in the sense that term is used in
the statute referred to. However, appellants expressly dis-
claim any right of recovery upon a claim against this estate
in that sense. Perhaps no better considered case can be
found in support of the proposition, that an action upon a
claim against an estate for damages for a breach of an
agreement by the testator to leave a bequest or devise is an
action at law, than the opinion of Angellotti, C. J., in
*Morrison v. Land,* 169 Cal. 580, 147 Pac. 259. The holding
is based upon the elementary principle that one cannot re-
sort to equity where he has a complete and adequate remedy
at law. It will be observed that all of respondents' authori-
ties cited in support of their contention as to this point re-
fer to actions where the legatee or devisee brought the
action for the breach of the agreement, not, as in the instant
case, where the assignees of the legatee brought the action.
Appellants contend that there is an essential difference be-
tween the relation of the promisee to such an agreement and
one to whom he has transferred his interest or a part of
the same, where he thereafter agrees with the promisor to
abrogate such agreement and take in lieu of the bequest or
devise a substantial consideration of a different character or
amount. There is no privity between the promisor and the
one to whom the promisee has attempted to assign a part of
his interest, unless such promisor has assented to the trans-
fer.

Appellants in their brief say "that the rights upon which
appellants predicate their cause of action are not rights

arising out of the assignment of a thing in action or the contract between Wallace Scott and Warren Scott, entered into on the twenty-sixth day of February, 1918, . . . . but is a promise to pay out of and an assignment of a one-half of all the moneys to be so left, or of the fund thereby created, and appellants having given the deceased Wallace Scott notice that the respondent Warren F. Scott had so assigned and transferred one-half of the said $175,000 . . . . and the said Wallace Scott, deceased, with such notice, having entered into the contract with the respondent Warren Scott, . . . . appellants'· right became an equitable right, . . . . and the relief sought is purely and wholly equitable relief. . . . . ''

All the parties to this action appear to agree that upon a breach of this contract by Wallace Scott with Warren Scott the latter could have maintained an action against the estate for damages for its breach, had he not consented to its cancelation. This principle of law is well settled, for, as said in *Morrison v. Land, supra:*

''There is no dissent in the authorities from the proposition that one may make a valid contract with another to devise or bequeath property by his last will in a certain specified way. It is clear that in the event of a breach of such contract the party damaged has an action at law for the damage caused by such breach of the promisor, and in some cases this, by reason of the circumstances, may be his only remedy, for a resort to any equitable remedy can be had only where the circumstances are such as to make the case one within the well-settled principles relative to the proper exercise of equitable jurisdiction.'' (See, also, *In re Simons,* 247 U. S. 231, 38 Sup. Ct. 497, 62 L. ed. 1094.)

Respondents argue with great force that appellants stand in the same relation to the estate of Wallace Scott that Warren F. Scott would have occupied had he and his father not abrogated this agreement and that appellants' remedy cannot be different from that of their assignor, and their argument is largely directed to the proposition that appellants not having presented their claim to the executors of

the estate as required by the sections of the statute above referred to, as the same have been construed in *Flynn v. Driscoll, supra,* their alleged cause of action must fail. Apparently appellants do not controvert the correctness of this proposition, but say that while' this agreement created an obligation upon the part of the father to the son, the son's promise to pay appellants out of this bequest and the transfer of a one-half of the sum which he was to receive amounts to an equitable assignment to them of an interest in this obligation, debt or fund, because Wallace Scott, having had notice of this transfer, could not alter or change the equitable rights of appellants in this debt he owed to Warren or in the fund he had agreed to create for him; therefore respondent Warren F. Scott and his wife and the other residuary legatees and the executors hold the legal title to this fund or debt and appellants hold the equitable title thereto; that this being true, a presentation of their claim to the executors and its rejection are not conditions precedent to the bringing of an action to recover the same. They rely upon the rule announced in *Toulouse v. Burkett,* 2 Ida. 184, 10 Pac. 26, and *Martin v. Smith,* 33 Ida. 692, 197 Pac. 823, and assert that the term "claim against an estate," as used in this statute, means an obligation made or assumed by a deceased person during his lifetime upon which an action could have been maintained against him were he living at its maturity. They expressly disclaim that they have rendered any services to Wallace Scott, but assert that the services for which they are seeking to recover in this action were rendered to Warren F. Scott. In support of their position they rely upon the rule announced in Pomeroy on Equity, 4th ed., vol. 1, wherein it is said:

"Sec. 1280. It is an ancient doctrine of the common law that no action of contract can be maintained unless there is privity of contract between the plaintiff and the defendant. It follows that if B is indebted to A, or has in his hands a fund belonging to A, and A assigns such debt or fund to C, or gives him an order for it upon B, C can maintain no action at law against B to recover the amount, unless B has

assented to the appropriation and promised to pay the money; and the action in such case will not be based upon any property or interest in the fund acquired by C through the assignment or order, but upon B's express or implied promise. The doctrine of equity is very different. Equity recognizes an interest in the fund, in the nature of an equitable property, obtained through assignment, or the order which operates as an assignment, and permits such interest to be enforced by an action, even though the debtor or depositary has not assented to the transfer,'' etc. (See, also, secs. 1281 and 1283.)

Appellants contend that Wallace Scott, having notice that Warren Scott had transferred one-half of his interest in this bequest to them, and Wallace Scott and Warren Scott having thereafter agreed to abrogate this agreement, appellants' right became an equitable one enforceable by equity against the estate of Wallace Scott, and that their only remedy is in equity. The weakness of appellants' position is that they were not in privity with Wallace Scott. They cannot and do not claim that they had any cause of action against Wallace Scott, since a right of action could not arise for a breach of his agreement until after his death. We do not think it follows that, because a testator, during his lifetime, agrees, even for a valuable consideration, to leave another a bequest or devise, his estate after his death thereby becomes bound either in law or in equity for claims or demands of persons who base their demand upon an assignment of an interest in such bequest or devise before it vested. The estate of a testator cannot be made liable for such claims. We conclude that the attempted transfer of a one-half interest in this expectancy, by Warren F. Scott to appellants, created no claim against the estate of Wallace Scott, as that term is used in the sections of the statute referred to.

This cause being here upon general and special demurrers to the complaint, and it being a settled rule of procedure that such demurrers admit the truth of all facts well pleaded and all inferences that may be legitimately drawn

from such pleading, it is therefore admitted that Wallace Scott, after the death of his wife, finding that under the laws of succession his foster-son had an equal share in all of the community property of himself and his deceased wife, for what would appear to be a grossly inadequate consideration and under conditions and circumstances that the law would not sanction, obtained from Warren assignments of his interest in his mother's estate; and that some years thereafter Warren employed appellants who brought an action to set aside these assignments and recover for him his mother's estate, to which he was the sole heir under the law as it then existed. Whatever the reasons that impelled Wallace Scott to make a settlement with his foster-son, it is apparent that the amount of this estate which belonged to Warren was a considerable sum, and it may be inferred that the consideration agreed to be paid for the dismissal of the suit in the federal court was fully warranted on the part of Wallace Scott. At any rate he paid the sum of $30,000 to Warren and agreed, at his death, to leave him the additional sum of $175,000. The condition of his affairs must have been such that it might reasonably be inferred the estate would be solvent and that such bequest or devise would be realized out of such estate. As a matter of fact, the estate of Wallace Scott after his death inventoried more than $500,000. It would therefore appear that the professional services of appellants were of great value to Warren F. Scott, and it would be inequitable to permit him to evade his obligation to appellants if Wallace Scott did in fact leave any part of his estate to Warren in part compliance or as a result of the agreement he made during his lifetime.

In *Rauh v. Oliver,* 10 Ida. 3, 77 Pac. 20, it is said that under our code of procedure technicalities of pleading under the common law have been dispensed with, and a plaintiff need only state his cause of action in ordinary and concise language, and when this has been done, a plaintiff can only be sent out of court when he is entitled to no relief, either at law or in equity. To the same effect are *Brown v. Bled-*

*soe,* 1 Ida. 746; *Carter v. Wann,* 6 Ida. 556, 57 Pac. 314; *First Nat. Bank v. Sampson,* 7 Ida. 564, 64 Pac. 890; *Bates v. Capital State Bank,* 18 Ida. 429, 110 Pac. 277; *Smith v. Rader,* 31 Ida. 423, 173 Pac. 970. The doctrine announced by these cases was recently referred to and approved in *Swinehart v. Turner,* 38 Ida. 602, 224 Pac. 74.

The situation here is somewhat analogous to that arising in *Zellner v. Wassman,* 184 Cal. 80, 193 Pac. 84, and we think the general principle of law therein announced is applicable, wherein it was held that, while appellant could not recover either in law or in equity upon the cause of action as he had alleged it, nevertheless he was entitled to some relief under the facts of his pleading, and that as a consequence the judgment of dismissal was erroneous, the court saying:

"There being but one form of civil action in this state, a plaintiff may recover if his complaint 'states any cause of action entitling the plaintiff to any relief at law or in equity.' (*Hayden v. Collins,* 1 Cal. App. 259, 261, 81 Pac. 1120, 1121.) It is not essential that a complaint state a cause of action for the relief which plaintiff seeks, provided the facts stated show some right of recovery, and a party cannot be thrown out of court merely because he may have misconceived the form of relief to which he is entitled (*Walsh v. McKeen,* 75 Cal. 519, 17 Pac. 673; *Rogers v. Duhart,* 97 Cal. 500, 32 Pac. 570; *Brown v. Anderson etc. Irr. Dist.,* 183 Cal. 186, 190 Pac. 797.)"

While the facts alleged in the complaint will not entitle appellants to recover one-half of the $175,000 from the estate of Wallace Scott, which during his lifetime he agreed to leave to his son Warren in consideration of the dismissal of the action which Warren then had pending against him to recover the estate left to him by the death of his mother, under which compromise agreement Warren had assigned a half interest to appellants in consideration of their services in his behalf, we think they are nevertheless not without a remedy. This contract on the part of Wallace Scott to leave his son at his death this sum was subsequently abro-

gated by a mutual agreement between the father and son, and this contingent interest or expectancy in this amount never in fact vested in the son. But the ancestor, Wallace Scott, did devise or bequeath to his son Warren a lesser sum, to wit, $86,510, in addition to certain conveyances of real property executed before his death, which were immediately transferred by Warren to respondent Anna Gertrude Scott, née Randolph, whom Warren immediately married. These conveyances and bequest were made to Warren Scott in consideration of the cancelation of the first agreement. We are therefore to look to the general principles of the law to ascertain what remedy, if any, appellants may have.

By the ancient common law things in action, expectancies, possibilities and the like, were not assignable; an assignee thereof acquired no right which was recognized by a court of law, for the act of assignment was regarded against public policy, if not illegal. The court of chancery from an early day rejected this rule, and, acting upon the principle that a man may bind himself to do anything not impossible and that he ought to perform his obligation when not illegal, equity has always held that the assignment of a thing in action, for a valuable consideration, should be enforced and has given effect to assignments of every kind of future and contingent interests or possibilities in real or personal property when made upon a valuable consideration. As soon as the assigned expectancy or possibility has fallen into possession the assignment will be enforced. (Pomeroy's Equity Jurisprudence, 4th ed., sec. 1270, p. 3061.)

The assignee of an ordinary thing in action—a debt or demand arising out of a contract—acquired at once an equitable ownership therein, while the assignee of an expectancy, possibility or contingency acquired at once a present equitable right over the future proceeds of such expectancy as soon as they came into possession by transformation of the possibility or contingency into an interest in possession. There was an equitable ownership or property in abeyance which changed into an absolute property upon the happening of the future event. Equity permitted the creation and

transfer of such ownership, while the common law rejected such notion. (Id., sec. 1271.)

An assignment of things in action at common law permitted the assignee to sue in the name of the assignor and to have entire control of the action and the judgment, and treated him as the only person having an immediate interest in the recovery, and the assignee, having a complete remedy at law, the necessity of a resort to equity ceased. (Id., sec. 1272, p. 3064.) Under the reformed procedure the law both in England and the United States has gone much further, and it is now the settled interpretation that whenever a thing in action is assigned the assignee must sue in his own name. This includes all things in action which survive and pass to the personal representatives of a decedent creditor as assets, or continue as liabilities against the representatives of a decedent debtor, and all which do not thus survive but which die with the person of the creditor or of the debtor are not assignable. (Id., secs. 1273–1275.)

A legal assignment of mere naked possibilities or expectancies, not coupled with an interest, has never been recognized but the assignment of contingent future expected interests and possibilities are recognized and upheld in equity. (Id., sec. 1285.) Mere possibilities or expectancies, although not coupled with a present interest, are assignable in equity for a valuable consideration; and equity will enforce the assignment when the possibility or expectancy has changed into a vested interest or possession. The explanation is sometimes given that the assignment operates as a contract by the assignor to convey the legal estate or interest when it vests in him, and that equity will specifically enforce such contract by decreeing a conveyance. (Id., sec. 1287.) A sale, mortgage or assignment of property, for a valuable consideration, to be acquired at a future time operates as an equitable assignment of the present possibility, which changes into the assignment of an equitable ownership as soon as the property is acquired by the vendor or mortgagor; and because this ownership

thus transferred to the assignee is equitable and not legal, the jurisdiction by which the right of the assignee is enforced, and is turned into a legal property accompanied by the possession, must be exclusively equitable. A court of law has no jurisdiction to enforce a right which is purely equitable. (Id., sec. 1288.)

As stated in *Bridge v. Kedon,* 163 Cal. 493, 126 Pac. 149, 43 L. R. A., N. S., 404:

"The general rule in equity is well established. Mr. Tudor, the author of Notes to White & Tudor's Leading Cases in Equity, says: 'A mere expectancy, as that of an heir at law to the estate of his ancestor (*Hobson v. Trevor,* 2 P. Wms. 191; *Wethered v. Wethered,* 2 Sim. 183, 192; *Smith v. Baker,* 1 Y. & C. C. C. 229), or the interest which a person may take under the will of another then living (*Beckley v. Newland,* 2 P. Wms. 182; *Bennett v. Cooper,* 9 Beav. 252; *Flower v. Butler,* 15 Ch. Div. 665), or the share to which such person may become entitled under an appointment (*Musprat v. Gordon,* 1 Anst. 34), or in personal estate as presumptive next of kin of a person then living (*Hinde v. Blake,* 3 Beav. 235; *Meek v. Kettlewell,* 1 Ph. 347), is assignable in equity for a valuable consideration; and when the expectancy has fallen into possession, the assignment will be enforced.' (Part 2, vol. 2, p. 839.) The cases cited support the text. The numerous cases cited in the extensive note show that the validity of such assignments may be presented either in a suit by the assignor to set aside the assignment, or in a suit by the assignee to enforce it, but that in whichever way it may come before the court, if it is founded upon a valuable consideration and is not contrary to public policy, it will be upheld and enforced to the extent that it is fair and reasonable."

As supporting the same general principle, see, also, *Re Lennig's Estate,* 182 Pa. St. 485, 61 Am. St. 725, 38 Atl. 466, 38 L. R. A. 378; *Cummings v. Lohr,* 246 Ill. 577, 92 N. E. 970.

Among other things appellants pray for a money judgment against the executors of the estate of Wallace Scott

for $87,500, and that the other respondents, as residuary legatees under the last will and testament, be adjudged to hold the legal title of his estate, to the extent of appellants' claim, in trust for them; and that Warren F. Scott and his wife, Anna Gertrude Scott, be adjudged equitable assignees of the interest left to them under such will. But, as said in *Smith v. Rader, supra,* that is only their opinion as to the relief which should be granted and is not binding upon the court. They should be granted such relief as their pleading and proof show them to be entitled to, either at law or in equity, and, as held in *Swinehart v. Turner, supra,* a general demurrer to a complaint should be overruled when such complaint alleges facts which show plaintiff entitled to some relief, which rule we think applies to appellants' third amended complaint, and that therefore the court erred in dismissing the same. As the special grounds of demurrer interposed by some of the respondents relate more to a cause of action against the estate of Wallace Scott, which we hold the complaint fails to state, these grounds need not be further considered.

The judgment of the court below is reversed, "with instructions to vacate the judgment of dismissal and reinstate the cause of action without prejudice to the rights of appellants to amend their pleading and limit their cause of action to a recovery of a one-half interest in the property received by Warren F. Scott from his father, Wallace Scott, by bequest or devise, and property actually conveyed by Wallace Scott, before his death, to Warren F. Scott under the agreement of October 30, 1918, or to any property received by virtue of an agreement made in lieu of the original agreement to leave Warren $175,000. That all of the property which has or may hereafter vest in Warren F. Scott or to which it shall appear Warren F. Scott or his wife, Anna Gertrude Scott, have received or are entitled to receive from Wallace Scott or from his estate by virtue of the agreement of Wallace Scott to leave his son, Warren F. Scott, $175,000, during the pendency of this action shall be impressed with a lien for the interest herein being claimed

by appellants by reason of the assignment which they claim to hold in the original agreement that Warren F. Scott should be left $175,000. This action shall be continued against the executors and all other parties claiming or asserting any interest in and to the estate of Wallace Scott, deceased, whose rights may be adversely affected by this proceeding, and no distribution shall be made to any of the legatees or devisees under the will of Wallace Scott, deceased, during the pendency of this action to the prejudice of the rights of appellants to assert their cause of action against the said interest of Warren F. Scott or his wife, Anna Gertrude Scott, which they or either of them have received or may receive from said Wallace Scott or his estate.

Neither party to recover costs on this appeal.

McCarthy, C. J., and Wm. E. Lee, J., concur.