SARAH M. PETERSON V. ESTATE OF JOHN H. BAUER ET AL.*

FILED MAY 17, 1906.  No. 14,312.

1. **Testamentary Bequest:** EVIDENCE. An alleged oral contract to adopt a child of a stranger and to make a testamentary bequest of an aliquot share of one's estate in his behalf, at the expense of children of the blood, or to make him a joint and equal heir with such children, must be established by clear and satisfactory evidence.

2. ———: REMEDY. A proceeding to enforce such an alleged contract is in substance a suit for specific performance, which is not litigable in the ordinary course of probate jurisdiction or in an action at law, but in proceedings in equity.

3. **Trial:** REVIEW. In the trial of·such a suit the functions of a jury, if one is called, are advisory only, and the court cannot commit reversible error in the giving or refusal of instructions.

4. **Trial to Court.** The prosecution of such a claim is an appeal to the conscience of the trial judge, who should admit in evidence every matter having a fairly ascertainable tendency to enlighten his understanding as to the situation and circumstances of· the parties.

ERROR to the district court for Cass county: PAUL JESSEN, JUDGE. *Reversed.*

*P. A. Wells* and *Fawcett & Abbott,* for plaintiff in error.

*Jesse L. Root* and *Jesse B. Strode, contra.*

AMES, C.

John H. Bauer, a resident of Cass county in this state, died in said county in June, 1903, leaving a will, afterwards duly admitted to probate, by which he bequeathed all his personalty to his son John Albert, and devised to him all his real estate for life, remainder in fee to his issue. Afterwards, during the progress of administration, there was filed in the county court a claim of which the following is a copy: "That the said estate of John H.

* Rehearing allowed. See opinion, p. 661, *post.*

Bauer, deceased, is indebted to Sarah Matilda Peterson for 20 years' labor performed for and services rendered to John H. Bauer, deceased, during his lifetime, at the instance and request of said John H. Bauer, deceased, in the sum of $9,000, for which services the said John H. Bauer, deceased, on or about February, 1872, orally promised and agreed to pay plaintiff by devise or bequest in his last will and testament, and which payment said John H. Bauer agreed should amount to and be not less than a sum equal to the value of one-half of the entire estate which he might leave at his death; said deceased having failed to provide for the payment of said claim in his will, and the value of the estate of said John H. Bauer at the time of his death being the sum of $18,000, there is now due and owing to said Sarah Matilda Peterson from the estate of John H. Bauer, deceased, for such labor and services, the said sum of $9,000; no part of which has been paid. Wherefore, plaintiff prays judgment against the defendant for said sum of $9,000, together with interest thereon from the 29th day of June, 1903, and for costs." The agreement thus set forth, if it existed, was undoubtedly testamentary in its character. *Teske v. Dittberner*, 65 Neb. 167, 70 Neb. 544. The county court allowed the claim for an amount approximating $6,000, and the administrator appealed to the district court, where issues were made up, and the result of a trial to the court and a jury was a verdict and judgment for the defense, from which the plaintiff prosecutes error in this court, alleging certain errors in instructions and in the exclusion of evidence offered in her behalf. Our attention is, however, not called to sufficient competent evidence in the record tending to prove the making of any such agreement as is set forth in the petition by or on behalf of the plaintiff with the deceased.

In 1872 the father of the plaintiff was a widower residing in Cass county, and the father also of a large family of children, among whom was a daughter named Mary, who has since married, and who is the principal witness for the plaintiff. In fact she is the only witness for the

plaintiff who assumes to testify with any distinctness as to what occurred or what conversation was had between her father and the deceased, at the time alleged in the petition, concerning the custody by the latter of the plaintiff, who was then a child seven years of age. She testified that she was present at the only interview concerning the matter in controversy shown to have been had between the deceased and her father, and that the former then said that he would like to have the girl as his own child and she should have half he had at his death. "Q. Did he say how he would leave it to her? A. She was to be adopted by him. Q. Did he say he would adopt her? A. Yes, sir. Q. And he would leave her half? A. Yes, sir. Q. Mr. Bauer voluntarily said there that he would leave half he had to this little girl if she would go and live with him? A. Yes, sir." This is the substance of the testimony of this witness, which she repeated two or three times, but it will be observed that the answers to the last two questions were put into her mouth by counsel and are entitled to but little, if any, weight. Several other witnesses on behalf of the plaintiff testified to divers conversations with the deceased, extending over a series of years, after she became an inmate of his household, in which he expressed satisfaction with her character and conduct and considerable affection for her, and in which he was importuned to make provision for her at his death, and in which with some reluctance, or at least with hesitation, he said that he intended that she should have "her share" or her "equal share" or that "he meant to divide equally between her and Ally," meaning his son. The girl was, in her ninth year, baptized with the ceremonies of the Congregational church by the family name of her foster-parents, by which she was always afterwards, until her marriage, commonly known, and she customarily spoke to and of them as her "papa" and "mamma" and they of her as their daughter, and the conduct of the parties in all other respects simulated that relationship. But it does not appear that there was ever any agreement or conversation

between the deceased and the plaintiff concerning any pecuniary provision to be made by him for her, and there is no evidence that he ever admitted having made any pledge or promise to her, or to anyone else, that he would make any testamentary disposition of his property for her benefit. His reluctantly expressed intent that she should be in some way provided for, so far from being such an admission, indicates on the contrary that both he and his interlocutors were aware that he was not already under legal obligation so to do, otherwise his natural and probable response to their importunities would have been that he had bound himself in conscience, if not in law, and would abide by his agreement. She remained in the home of the deceased for 18 years, being clothed, educated and treated in all respects as a social equal, until her marriage, at the age of 25 or 26, in 1890, shortly prior to which event he conveyed to her a tract of real estate of a value at that time variously estimated at from $1,000 to $3,000. It is plain that she has made no great sacrifice and has suffered no great wrong or hardship such as, it is said, sometimes leads the courts to announce "bad law." It may well enough be said that the deceased believed that he had fully satisfied his expressed intent to make suitable and adequate provision for her out of his estate, the more especially as the will admitted to probate superseded one made at a time about half way between the marriage and his death, in which no provision was made for her.

We do not think it worth while to treat of the alleged agreement to adopt the plaintiff, which, however, is emphatically denied by the only other living witness who was present at the interview at which it is represented to have been made, and who says that the only promise that deceased made was that he would rear and educate and clothe and care for the child until she should attain her majority. It is quite obvious that an agreement to adopt is an entirely different thing from an agreement to bequeath or devise. A legal adoption, under the forms pro-

vided by the statute, would have given the plaintiff nothing more than the *status* of a child of her foster-father born in wedlock, and would have conferred upon her no interest in his estate, except in case of intestacy, which has not occurred. It may be added, however, that the story of an agreement either to adopt or make a testamentary provision for the plaintiff with the effect of a partial disinheritance of the deceased's own son is destitute of much inherent probability. Bauer and Nix, the father of the child, were not only not related by blood or affinity, but appear to have been utter strangers, as were also the former and the plaintiff, until the occasion of the interview at which the supposed agreement in question is alleged to have been made. Bauer, it seems, made known to a neighbor woman, named Smith, his desire to adopt a girl, at least such is the story of the latter, and she, with a friendly disposition to please, introduced him to Nix and his family, much as she might have introduced a man desiring to purchase a horse to one whom she knew to be the owner of a large number of such animals, ten to be exact, some of which, she presumed, he would be willing to sell. That the child should have been inspected and irrevocably purchased at a price relatively so high, at this first brief interview, and without any knowledge by hearsay or otherwise of her disposition, character or capabilities, and without apparent knowledge on the part of her father of the character and moral responsibilities of the purchaser, is such a transaction as appears to us to be so extremely unusual, if it ever happens, as to require to be established by evidence more cogent than the testimony of interested witnesses and of neighboring gossips after the lapse of more than 30 years from the date of the supposed event. Rather, in such a case, we think, would the proposed foster-parent have exercised at least the prudence of an ordinary purchaser of a family nag, namely, he would have taken the child home with him and introduced her to his wife, and have ascertained by acquaintance and experience her fitness for the contemplated relation with him-

self and family, and would have reflected somewhat upon the extent, if any, to which he could afford, or it would be prudent, to obligate himself and his estate in her behalf. And this, we are convinced, is precisely what was done, or at any rate it is the only conclusion to which, in our minds, the evidence points. Even Mary, the sister of the plaintiff and her principal witness, testifies that the matter was not finally concluded at this interview, but that the father was "to go over to Mr. Bauer's afterwards and fix up the papers" of adoption. And afterwards there were frequent conversations by the witness and the neighbors with Bauer about the girl and her conduct, and about his making some contract or arrangement by which to insure her a share of his estate, all of which tends to show that no definite or final arrangement or provision had been previously made.

Counsel for plaintiff relies chiefly upon the decision of this court in *Kofka v. Rosicky*, 41 Neb. 328. But the circumstances of that case were, we think, materially different from those in the present one. The child was an infant, a few months old, and the parents and foster-parents near relatives, the latter not having or having hope of issue of their own, and the purport of the agreement was indicated in a written declaration in the form of a will by the foster-mother made after the death of her husband and in contemplation of her own speedy dissolution. And the relation which had been assumed toward the child had been frequently recognized and talked about by both in their social intercourse with neighbors and friends. Presumably not all the facts and circumstances which influenced the mind of the court are set forth in the opinion, which in such cases it is almost impossible to do, but that it was not intended to open a door for vague inferences from doubtful or ambiguous testimony of more or less interested or meddlesome witnesses concerning oral conversations alleged to have taken place at a time long past (in this case nearly a third of a century) is evident from the following excerpt:

45

"There is a line of authorities emanating from some of our able courts of last resort, most notably those of Indiana, Illinois, and Iowa, which denies the right to specific performance of a contract similar to the one under which the claim in this case arises mainly upon the ground that the statute was enacted to cover just such cases; that it will work no hardship to require parties to put all such agreements in writing and that the testimony of witnesses should not be received, probably several years after the happening of the event, to establish a contract by parol, by which the course of the descent of lands will be changed. These are strong and cogent reasons, and it is not our province to attack or attempt to refute them. As we understand it, they are the underlying, principal reasons for the rule as embodied in the statute; but we do not think the rule should be so rigidly adhered to as to accomplish a fraud as against one of the persons affected by the contract to which it is to be applied."

In harmony with the foregoing expression this court held in *Teske v. Dittberner*, 65 Neb. 167, that such an agreement as is here contended for "is in contravention of the letter both of the statute of frauds and of the statute of wills, and should be closely scrutinized, so that the transaction may not be made the means of the exercise of undue influence or the practice of fraud or other abuses." The pretty nearly, if not quite, universal attitude of the courts toward such contentions as that brought forward in this case is forcibly but accurately expressed by the supreme court of Illinois in *Dicken v. McKinley*, 163 Ill. 318, 54 Am. St. Rep. 471, as follows: "Such contracts are looked upon with suspicion, and are only sustained when established by the clearest and strongest evidence." And in *Kinney v. Murray*, 170 Mo. 674, 700: "But, the proof of such a contract must be so cogent, clear and forcible as to leave no reasonable doubt in the mind of the chancellor as to its terms and character." See also *Knight v. Tripp*, 121 Cal. 674; *Hamlin v. Stevens*, 177 N. Y. 39; *Newton's Executor v. Field*, 98 Ky. 186; *Wall's Appeal*, 111 Pa. St.

460, 56 Am. Rep. 288; *Eastwood v. Crane,* 125 Ia. 707.
Tested by the rules promulgated in these decisions,
which have twice received the implied approval of this
court, the evidence of the plaintiff falls far short of estab-
lishing her alleged cause of action.

There remains for decision a matter of vital importance
to this case and to future controversies of like kind, and
also two assignments of error upon which counsel for
plaintiff places great reliance; one having reference to an
instruction given to the jury, and the other with respect
to a ruling on an objection to evidence. The proceeding
is in the form of an action at law, having originated in the
district court in an appeal from an allowance by the
county court of a money demand filed against the estate
of the deceased, but the nature of the claim, notwithstand-
ing its form, is really and practically a suit to compel
a specific performance of the alleged contract and like all
such demands is addressed to the conscience of the trial
judge sitting as a chancellor. The issue is one with which
from its very nature and essence a court of law is incom-
petent to deal, and the present attempt to litigate it in
such a tribunal is, so far as our information goes, without
precedent. Counsel for neither party has cited to us any
authority for such a proceeding and we doubt exceedingly
if any can be found. The suit is one to bind specifically
the estate, real and personal, of the deceased with a con-
tract alleged to have been made by him in his lifetime,
which is confessedly void by positive statute both in form
and in substance, but which it is contended that equity
will nevertheless enforce for the purpose of preventing
fraud and doing exact justice. To such a suit the persons
claiming title to the lands of the decedent as heirs or
devisees, and asserting rights as distributees of the person-
alty by will or by statute, are indispensable parties with-
out whose presence a final determination of the contro-
versy cannot be made. It follows that such a claim is
not litigable in the ordinary course of probate administra-
tion, but must be prosecuted, if at all, in a court of original

and general equitable jurisdiction and powers, the executor or administrator being a proper but not.in all instances a necessary party. This principle is distinctly announced in *Kofka v. Rosicky, supra,* in which it is said: "It is a matter of discretion in the court which withholds or grants relief, according to the circumstances of each particular case, when the general rules and principles which govern the court will not furnish any exact measure of justice between the parties," citing 2 Story, Equity Jurisprudence (13th ed.), sec. 742; *Clarke v. Koenig,* 36 Neb. 572, and several other authorities at considerable length. It further follows that, when a jury is called in the trial of such a case, its functions are advisory only, and the court cannot commit reversible error in the giving or refusal of instructions. The point is well illustrated by one of the assignments of error before referred to. The court gave to the jury the rule of law approved by all the above cited authorities as applicable to the trial of such issues, viz., that the plaintiff in order to prevail must establish her contention "by clear and satisfactory proof." That such an instruction in the trial of an action at law would be reversible error goes, in this state, without saying; yet, if a jury may try and determine the issues in such a case as this, it must be given or there will be danger of a complete failure of justice.

The court refused an offer by the plaintiff to prove that John Albert, the alleged son and sole beneficiary in the will of Bauer, is not his son but a stepson, that is, the son of his wife by a former husband. We think that the evidence ought to have been admitted. It might, in some circumstances, have an important bearing upon the motives and intent of the deceased, and upon the decision of the probability of his having entered into the alleged agreement. The inquiry, as has been often said, was addressed to the conscience of the court and nothing should have been excluded which had a fairly ascertainable tendency to enlighten his understanding as to the situation and circumstances of the parties.

We do not think it necessary to discuss the case at greater length at this time. The district court rendered a judgment for the defendant upon the merits. This, we think, he was without jurisdiction to do, and we recommend that the judgment be reversed and the action dismissed at the costs of the plaintiff, but without prejudice to a new action against the administrator and the real parties in interest.

EPPERSON, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the action dismissed at the costs of the plaintiff, but without prejudice to a new action against the administrator and the real parties in interest.

REVERSED.

The following opinion on rehearing was filed March 21, 1907. *Former judgment adhered to:*

1. **Heirship: EQUITY.** The right of heirship in an estate can only be established in an action in equity; an action at law cannot be maintained to recover the value of an undivided half of an unsettled estate on the ground that the decedent agreed in his lifetime to make the claimant his heir.

2. **Syllabus of former opinion explained.**

LETTON, J.

The issues involved in this case have been stated in a former opinion, *ante,* p. 652. The correctness of the statements of fact and conclusions of law found in the opinion of Mr. Commissioner AMES were strongly attacked by a brief upon motion for rehearing. A rehearing was granted and the case is again before us for consideration.

In the former opinion, *ante,* p. 652, it was said: "Our attention is, however, not called to sufficient competent evidence in the record tending to prove the making of any such agreement as is set forth in the petition." This statement has been assailed by plaintiff's counsel. The agree-

ment set forth in the petition was that, in consideration of services to be rendered by the plaintiff, "John H. Bauer, deceased, orally promised and agreed to pay plaintiff by devise or bequest in his last will and testament, and which payment said John H. Bauer agreed should amount to and be not less than a sum equal to the value of one-half of the entire estate which he might leave at his death." The evidence on plaintiff's behalf, standing alone, tends only to prove that there was an agreement that Bauer should leave the plaintiff one-half of his estate, which is a very different thing from proving that he agreed to pay by devise or bequest, a sum equal to the value of one-half his estate. The one is an agreement to pay in money, the other to pay in property. A plaintiff seeking to recover upon a promise to pay a sum equal to the value of a certain horse would not be entitled to succeed in his action if he proved a promise to pay by the delivery of the horse, since his allegations and his proof would not agree, hence the language criticized is not unwarranted under the proof offered.

In the brief and argument on rehearing, severe criticisms were made upon the statements of fact in the opinion. It is sufficient to say that some minor errors occurred, but in the main the statement of facts reflects the evidence. It may be said, however, that the writer does not view the evidence on the part of the plaintiff in the unfavorable light in which it plainly appeared to Mr. Commissioner Ames, and upon another trial, with evidence introduced which we have held was erroneously excluded at the former trial, the entire testimony should receive the careful and candid consideration of the trial court, unbiased and uninfluenced by any statements or conclusions as to the facts expressed in either of the opinions of this court, and should be tried *de novo* in all particulars. Whether or not the evidence will sustain an action for specific performance, or an action for the value of the services, is a matter which is left open for future determination upon such evidence as may be produced.

The proposition that the alleged contract must be estab-
lished by clear and satisfactory evidence is very vigorously
attacked by plaintiff, and it is contended that a prepon-
derance of the evidence is all that is required in any civil
action, and that a requirement that the evidence be "clear
and satisfactory" requires more than a preponderance and
requires it to be established beyond a reasonable doubt,
citing *Stevens v Carson*, 30 Neb. 544; *McEvony v. Row-
land*, 43 Neb. 97; *McCord-Brady Co. v. Moneyhan*, 59 Neb.
593; *Western Mattress Co. v. Potter*, 1 Neb. (Unof.) 627.
It may be said, however, that, while it is true that a pre-
ponderance of the evidence is all that is required of the
plaintiff in any civil action, yet the nature of some cases
is such that the probative force of testimony may be
weakened or counterbalanced to some extent by the exist-
ence of legal presumptions or other circumstances which
may affect its credibility. Where it is sought to establish
a resulting trust by parol evidence, or where it is sought
in effect to evade the statute of wills or the statute of
frauds in like manner, or where conveyances have been
made by parties in failing circumstances to near relatives,
the circumstances of the case require that the proof be
clear and satisfactory in order to overcome the presump-
tion which the circumstances raise. The nature of the
case demands a closer scrutiny of the evidence than in
an ordinary controversy, but if after testing it by these
canons it preponderates in favor of the plaintiff it is suf-
ficient to justify and sustain a finding in his favor. *Veeder
v. McKinley-Lanning L. & T. Co.*, 61 Neb. 892; *Doane v.
Dunham*, 64 Neb. 135. The former opinion is correct in
requiring that the proof in such a case as this be "clear
and satisfactory."

We think it is unnecessary at this time to reexamine
the questions passed upon in the cases of *Kofka v. Rosicky*,
41 Neb. 328, 25 L. R. A. 207; *Teske v. Dittberner*, 65 Neb.
167, 70 Neb. 544, and *Pemberton v. Pemberton's Heirs*,
p. 669, *post*. As was pointed out in the opinions in these
cases, it is impossible to reconcile the views of the various

courts of the United States upon the questions presented, but this court has adopted the rule in *Kofka v. Rosicky, supra,* and we are content to abide by the doctrine of that case as being the most apt to prevent injustice and to do equity. In such a case, if the trial court, bearing in mind the ease with which claims may be presented when the other party to the alleged contract is dead, carefully scrutinizes the evidence and weighs the same, taking fully into consideration the nature of the claims and the known inaccuracy of memory with reference to oral statements made years before the time of the trial, we think the evil consequences to estates which may accrue, and which the counsel for the defendant so strongly sets forth, may be greatly minimized. The difficulty of proving contracts made many years before, when the lips of both participants are sealed, one by death and the other by the law, operates to the disadvantage of the claimant, and it may prevent a just recovery in as many cases as the ease with which claims may be trumped up may operate to spoliate estates; though claims of this kind are always dangerous.

The contention of the plaintiff briefly stated is: That John H. Bauer agreed to leave the plaintiff one-half of the value of his estate in consideration for services to be rendered; that the services were rendered; that he broke the contract by failing to leave her one-half of his estate; that she was entitled to her election of two remedies, either to bring an action for specific performance, or to recover damages for the breach of the contract; that in an action for the breach of the contract the measure of damages is the value of the property to which the plaintiff was entitled, but which she failed to receive. In support of this position the plaintiff cites *Sharkey v. McDermott,* 91 Mo. 647; *Frost v. Tarr,* 53 Ind. 390; *Burlingame v. Burlingame,* 7 Cow. (N. Y.) 92; *Malaun's Adm'r v. Ammon,* 1 Grant Cas. (Pa.) 123, and other cases. *Sharkey v. McDermott, supra,* was an action for specific performance under circumstances similar to those in *Kofka v. Rosicky, supra.* The case was decided upon a demurrer to the petition, and,

since the petition did not state whether the contract was in writing or not, the court held that it would be presumed to be in writing. This case throws no light upon the point involved. The facts in *Frost v. Tarr, supra,* were very similar to those alleged in this case. An action at law was brought for damages for breach of the contract, and it was held that the damages may be measured by the value of the portion of the estate promised. This is in line with the plaintiff's contention in this case. Nine years later the case of *Wallace v. Long,* 105 Ind. 522, came before the same court. In the opinion the prior cases in Indiana and other states are reviewed, and it is pointed out that *Malaun's Adm'r v. Ammon, supra,* had been overruled in *Hertzog v. Hertzog's Adm'r,* 34 Pa. St. 418, and that so much of *Burlingame v. Burlingame, supra,* as gave support to the doctrine of *Frost v. Tarr, supra,* had been disapproved by the court of appeals in New York in *Erben v. Lorillard,* 19 N. Y. 299. We think it unnecessary at this time to decide the question as to which of these conflicting views we shall adopt, since the contract which the plaintiff counts upon is for a sum equal to one-half of the value of Bauer's estate. This means the net value, and not the gross value. The claims of creditors, if any, and the expense and costs of administration, including funeral expenses, etc., must be deducted. *Graham v. Graham's Ex'r,* 34 Pa. St. 475. No proof was offered to show what the net value of the estate is. The estate is still unsettled. A jury is not competent to determine such a question in this action, and the proper tribunal to take an accounting of the debts and liabilities of the estates of deceased persons and to determine the net amount of an estate for distribution is the probate court. *Grant v. Grant,* 63 Conn. 530, 38 Am. St. Rep. 379.

The conclusions of the former opinion that such an action as this, to appropriate one-half of the net value of the estate, should be in chancery, where all persons interested may be made parties, are sound and are adhered to. While, as we have said, we do not take the same view of

the evidence as expressed in the former opinion, we think the propositions of law laid down in the syllabus, as herein explained, are sound.

FORMER JUDGMENT ADHERED TO.