ERWIN, APPELLANT, *v.* MARK ET AL., RESPONDENTS.

(No. 7,686.)

(Submitted September 30, 1937. Decided November 2, 1937.)

[73 Pac. (2d) 537.]

*Mr. Howard A. Johnson* and *Mr. Clarence E. Wohl,* for Appellant, submitted an original and a supplemental brief; *Mr. Johnson* argued the cause orally.

*Messrs. Gilbert, Gilbert & McFadden,* for Respondents, submitted a brief; *Mr. Theo. F. McFadden* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment of dismissal and for costs entered in favor of defendants after a demurrer to plaintiff's complaint was sustained. The only question before us is whether the complaint states facts sufficient to constitute a cause of action. The important facts alleged are these:

Maggie Courtney died at Dillon on August 1, 1930, leaving real and personal property worth approximately $20,000. On September 2 thereafter a document purporting to be her last will and testament was admitted to probate and letters were issued to Chris Snyder, the executor named in the purported will; and as such executor he caused notice to creditors to be

published, requiring presentation of claims within ten months after September 17, or on or before July 17, 1931. On April 4, 1931, a petition to revoke the probate of the will was filed, and on March 9, 1932, judgment was entered revoking the probate of the will as well as the letters testamentary. On April 30, 1932, letters of administration were issued to defendant Winnifred Emerick. Maggie Courtney left no other will, and left as her only heirs at law one sister and nephews and nieces, the children of deceased brothers and sisters, who are defendants in this action.

During the year 1918, plaintiff, at the request of Maggie Courtney, began to look after her personal and financial affairs and continued to do so until the death of Maggie Courtney. The services consisted of writing letters and other papers, looking after property, writing checks, keeping track of bank accounts and bank balances, paying taxes, making collections, advising Maggie Courtney upon personal, business, and miscellaneous matters, and, in general, performing confidential and personal offices and services, ''part of which can be performed only by a close friend and associate and cannot be purchased or had on an ordinary employment basis.'' It is alleged that among other services plaintiff ''advised and protected the said Maggie Courtney against gross abuse of confidence and improper interference with and control of her affairs on the part of certain relatives and others who had theretofore stood in confidential relationship with said Maggie Courtney and who sought improperly to use their said confidential relationship for their own ends and against the interests of said Maggie Courtney.''

It is further alleged that plaintiff protected Maggie Courtney against the efforts of certain persons to have her adjudged insane and committed to the hospital for the insane; that it would be impossible to determine the money value of the services; that about June 25, 1927, plaintiff and Maggie Courtney entered into an agreement whereby it was agreed that in consideration for such services theretofore performed and to be performed during the lifetime of Maggie Courtney, she would

bequeath to plaintiff a legacy in a sum to be thereafter determined; that about March 1, 1929, it was agreed and determined that the legacy was to be the sum of $4,000; that the deceased attempted to perform the agreement by providing for such a legacy in the purported will which she made; that plaintiff relied upon the bequest and in good faith believed that Maggie Courtney had fully performed her part of the contract, and did not discover until on March 9, 1932, when the judgment was entered revoking the probate of the will, that she had not done so; that the time for presenting claims against the estate expired on July 31, 1931, long before such judgment was entered; that the interest which defendants have in the estate are as next of kin, and not otherwise, and that the rights of defendants in the estate to the extent of $4,000 are only as trustees for plaintiff; and that plaintiff, in equity and good conscience, is entitled to the sum of $4,000 from the estate after the payment of all debts and expenses of administration.

The prayer is for specific performance of the contract; that defendants be declared to be trustees for plaintiff to the extent of $4,000, with interest; and that the court enter a decree establishing plaintiff's right as a legatee to the extent of $4,000, with interest, and enjoining other disposition or distribution thereof.

That a person may make a valid contract to dispose of his property by will is no longer open to doubt. (*Burns* v. *Smith*, 21 Mont. 251, 53 Pac. 742, 69 Am. St. Rep. 653; *Sanger* v. *Huguenel*, 65 Mont. 236, 211 Pac. 349.) In case the promisor fails to carry out his promise to make a valid will, courts of equity will grant relief in the nature of specific performance by compelling the personal representative, the heirs, devisees, or legatees to hold the property as trustees for the benefit of the promisee. Page in his work on Wills, 2d ed., vol. 1, section 107, page 192, has well stated the rule as follows: "If promisor has entered into a valid contract to devise or bequeath property, and dies without leaving a valid will in accordance with the terms of the contract, equity will give relief, subject to the restrictions which equity imposes in cases of this sort in

general, and subject to the satisfaction of each specific case. This is often spoken of as specific performance. It is, of course, not technical specific performance, since there is no attempt to compel the promisor to make a will. It is rather relief in the nature of specific performance. The real purpose is to have the heirs, devisees, next of kin, or personal representative of the deceased promisor held as trustees of the property which the promisor had agreed to devise or bequeath, and to compel them to hold the legal title thereto for the benefit of the promisee *cestui que trust.*" This remedy is more frequently resorted to when the subject-matter of the contract is real estate rather than personal property, but the jurisdiction extends likewise to contracts relating to personal property, the real basis for the action resting upon the ground that damages at law will not afford a complete remedy. (*Gravelin* v. *Porier,* 77 Mont. 260, 250 Pac. 823; 58 C. J. 1060.)

It is at this point that the counsel for the respective parties ▮▮ take divergent views. Counsel for defendants contend that plaintiff had an adequate remedy at law by presenting her claim against the estate under section 10173, Revised Codes, and bringing action thereon if rejected. Plaintiff's counsel contend that it was unnecessary to present a claim in order to enforce the equitable remedy.

It is not necessary to present a claim for the specific performance of a contract entered into by deceased during his lifetime. (*In re Bank's Estate,* 80 Mont. 159, 260 Pac. 128.) This is the general rule also in equitable actions to enforce specific performance of a contract to make a will by fastening a trust upon the property agreed to be willed.

The supreme court of Arkansas, in *Fred* v. *Asbury,* 105 Ark. 494, 152 S. W. 155, 157, in discussing this question said: "The statute of nonclaim is urged as a bar to the relief sought. This statute provides that all claims against estates of deceased persons shall be barred unless they are properly authenticated and presented to the executor or administrator within one year after the grant of letters; but this is not a proceeding to enforce a claim or demand against the estate of Jacob Fred, deceased,

but is one to determine the rights of the parties to this suit to the property in question. The statute of nonclaim does not refer to claims of title, or for the recovery of property, for the reason that claims of such a character cannot in any just sense be said to be claims against the estate of the deceased. On the contrary, the right to recover is based upon the fact that the property claimed does not belong to the estate, but belongs to the party asserting title to it." To the same effect are *McCullough* v. *McCullough,* 153 Wash. 625, 280 Pac. 70; *Furman* v. *Craine,* 18 Cal. App. 41, 121 Pac. 1007; *Brickley* v. *Leonard,* 129 Me. 94, 149 Atl. 833; *Oles* v. *Wilson,* 57 Colo. 246, 141 Pac. 489, 491.

Defendants contend that while this is the general rule, there is an exception when the agreement is to will a specified sum of money. They contend that in such a case there is an adequate remedy at law to recover that amount of money, and rely upon the cases of *Morrison* v. *Land,* 169 Cal. 580, 147 Pac. 259, and *Zellner* v. *Wassman,* 184 Cal. 80, 193 Pac. 84. These cases support their contention, but we do not agree with the reasoning upon which they are based. We agree with and follow the Colorado supreme court on this point. The question was before that court in the case of *Oles* v. *Wilson,* supra. In that case the agreement was that the promisor would bequeath "a portion amounting in the minimum to or sum equal to not less than one-third (1/3) of the valuation of his entire estate." In a suit for the specific performance of the contract it was held that it was not necessary to present a claim. The court, after reviewing the statutes of that state, which are similar to though not identical with ours, said: "It seems clear from the different sections of the act, taken and construed together, as well as from the nature and reason of the case, that the words 'all demands against the estate,' as used in the statute, do not include a claim of the nature of the one forming the basis of this suit. The contract before us contemplates that the 'demands' of the statute, of all classes, should be satisfied in full out of the estate before the plaintiff herein should receive anything whatever. This is true, because that which she should receive by its terms was to be vested

by the will of Macky. Such means of conveyance necessarily limits the estate, and the final investment of title, to that which is left after 'all demands against the estate,' as defined in the statute, have been satisfied. Moreover, if the rights of the plaintiff under the contract fall within 'demands' of the fourth class, as prescribed by the statute, and are subject to its disabilities, such rights would likewise be subject to the benefits of the statute, and would therefore prorate with other claims of the same class if the estate were insufficient to pay the whole of the demands. (Section 7216, supra.) To include the rights arising by virtue of the contract in question within the purview of the words 'demands against the estate,' would destroy all distinction between creditors of the estate, on the one hand, and those entitled as distributees thereof, after the payment of its debts, on the other. In construing a statute, courts, if possible, consistent with the reasonable meaning of the words employed in their association with the language of the whole act, ascribe to it a meaning that will avoid absurd results and far-reaching evil effects in its application. The difference between a 'demand against the estate,' within the meaning of the statute, and the rights of the claimant under a contract like the one at bar, is radically and sharply defined. The former is a demand against the estate which must be paid or satisfied in advance of distribution; while the latter is a right or interest in the estate, an equitable ownership therein, after the claims against the estate have been allowed and paid.''

In the case of *In re Peterson*, 76 Neb. 652, 107 N. W. 993, 111 N. W. 361, 363, the court had before it a contract wherein the promisor had agreed to bequeath ''a sum equal to one-half of the value of Bauer's estate.'' The court, in discussing the question whether an action at law was proper, said: ''This means the net value and not the gross value. The claims of creditors, if any, and the expense and costs of administration, including funeral expenses, etc., must be deducted. (*Graham* v. *Graham's Exrs.*, 34 Pa. 475.) No proof was offered to show what the net value of the estate is. The estate is still unsettled.

A jury is not competent to determine such a question in this action, and the proper tribunal to take an accounting of the debts and liabilities of the estates of deceased persons and to determine the net amount of an estate for distribution is the probate court. (*Grant* v. *Grant*, 63 Conn. 530, 29 Atl. 15, 38 Am. St. Rep. 379.) The conclusions of the former opinion, that such an action as this, to appropriate one-half of the net value of the estate, should be in chancery, where all persons interested may be made parties, are sound, and are adhered to.'' The former opinion to which the court adhered is found in *In re Peterson*, 76 Neb. 652, 107 N. W. 993.

Our statute provides for the payment of demands against an estate in a certain order. (Sec. 10307, Rev. Codes.) If the estate is insufficient to pay all debts of any one class, payments are prorated. (Sec. 10309, Id.) Legacies are not payable until all debts are paid and may be reduced ratably in order to pay debts. (Sec. 7053, Id.)

According to the allegations of the complaint, plaintiff is not a creditor of the estate, in the sense that her claim would have to be paid ahead of bequests in case a will were left by deceased. By the very terms of the contract she was to become the beneficiary of a bequest in the sum of $4,000. Whether she would actually get that amount of money would depend upon, first, the amount of debts owing by the deceased, and, second, whether, after the debts were paid, there was sufficient property in the estate to pay all legacies in full. These issues could not be settled in an action at law for damages.

Other cases holding that specific performance of a contract to will a certain sum of money may be had are the following: *Bateman* v. *Franklin*, 114 Kan. 183, 217 Pac. 318; *Ohlendiek* v. *Schuler*, (C. C. A.) 299 Fed. 182.

The case of *Grant* v. *Grant*, 63 Conn. 530, 29 Atl. 15, 38 Am. St. Rep. 379, laid down the same rule as the *Oles Case*, supra, and for the same reason. It held, however, that since the contract sued upon in that case was invalid because of the statute of frauds, it could not be enforced in equity as a contract to

make the claimant a legatee. It is fair to assume that, had the court found the contract valid, it would have enforced it in equity. But the court, finding it invalid, permitted the action to be maintained as one at law requiring the presentation of a claim, but did so apparently on the theory that where the services had been performed at the request of the decedent with the understanding that they would be paid for at death, a contract would be implied whereby the decedent would be held to have agreed to pay the reasonable value of the services and making the claimant a creditor and not a legatee. Here, according to the complaint, the contract to make the plaintiff a legatee was definite, certain and valid.

We are mindful of the fact that some courts draw a distinction between cases where the services are ordinary and capable of being measured by a money value, and those of an extraordinary nature not capable of a money valuation. The case of *Morrison* v. *Land,* supra, was at least partially based upon the fact that the services there involved were not of an extraordinary or peculiar nature. Here there is an allegation that at least a part of the services were of a peculiar nature and such that their value could not be measured in money. However, we think that feature of the case is immaterial. We believe there was not an adequate remedy at law regardless of the character of the services rendered, since plaintiff had no means of proving the exact amount of money to which she was entitled. In an action for damages "the injured party has the burden of proving the amount of his harm; and damages are inadequate in proportion to his inability to bear that burden." (Restatement of the Law of Contracts, sec. 361, and comments.) Here plaintiff could not prove the extent of her damages in a law action. Equity has the right to grant relief in the nature of specific performance. Plaintiff is not a creditor of the estate with a claim which must be presented, but under the agreement alleged is entitled merely to be placed in the class of a legatee. The complaint states facts sufficient to constitute a cause of action.

The judgment is reversed and the cause remanded with directions to set aside the order sustaining, and to enter an order overruling the demurrer.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.