227 P.2d 954

**ASHBAUTH et al. v. DAVIS et al.**

No. 7680.

Supreme Court of Idaho.

Feb. 16, 1951.

Rehearing Denied March 9, 1951.

Gigray & Boyd, Caldwell, for appellant.

Earl E. Garrity, John W. Garrity, Nampa, J. W. Galloway, Boise, for respondent.

152

TAYLOR, Justice.

Plaintiffs (appellants) allege in their amended complaint that they are the sons and daughters, and all of the sons and daughters, of Agnes L. Sanford, deceased; that the defendants (respondents) are the devisees, legatees and heirs at law of Frank Sanford, deceased; that Agnes L. Sanford and Frank Sanford were married on or about November 28, 1927, and remained husband and wife until October 10, 1944, when Agnes L. Sanford died; that on January 26, 1939, Agnes L. Sanford and Frank Sanford entered into a written agreement which is attached to the complaint and is as follows:

"This agreement, Made and entered into this 26th day of January, 1939, by and between Frank Sanford of Melba, Idaho, the party of the first part, and Agnes L. Sanford of Melba, Idaho, the party of the second part, Witnesseth:

"That, whereas, the parties hereto are now and ever since the 28th day of November, 1927, have been Husband and Wife, and

"Whereas, each of the parties hereto were married prior to their marriage as aforesaid, and each have children born to their former marriages. There are no children born of the marriage of the parties hereto, and

"Whereas, the party of the first part was at the time of his marriage to the party of the second part, the owner of certain real estate situated in Canyon County, State of Idaho, which said property was and is the sole and separate property of the party of the first part, and

"Whereas, at the time of said marriage, the party of the first part was the owner of certain personal property, which has been used by said parties since their marriage and is co-mingled with the earnings of said parties since marriage, and

"Whereas, it is agreed between the parties hereto that the said personal property is the community property of the parties hereto, and

"Whereas, the party of the first part, has made a Will providing for the maintenance and support of the party of the second part, and

"Whereas, it is desired by the party of the second part that in the event that she shall die prior to the death of the party of the first part, that the party of the first part shall have the right to the use of her one-half of the community property for the remainder of his life, subject however, to the terms and conditions herein contained, and the party of the second part desires that said use of said property by the party of the first part, shall be vested in the party of the first part under the terms of this agreement,

"Now, therefore, this agreement witnesseth: In consideration of the mutual covenants and agreements, the party of the first part does hereby agree that in the event that the said party of the second part shall die prior to the death of the party of the first part, the party of the first part shall promptly have a complete inventory made of all the personal property owned by the parties hereto at *the of* the death of the party of the second part, fixing the fair market value thereof, such inventory and appraisement to be taken by three disinterested parties, and the value fixed upon said property by said appraisers, to be selected by the party of the first part, shall become final and conclusive as to the value of said community property;

"That, thereafter, the party of the first part agrees that he will by codicil, or otherwise, arrange that at the time of his death, that there shall be paid in equal shares to the heirs of the party of the second part, hereinafter named, the value of one-half of said community property without interest, after the death of the party of the first part;

"That, upon the death of the party of the second part, if she shall die prior to the party of the first part, the title to all said community property shall become immediately vested in the party of the first part, and the heirs of the party of the second part shall have no right or interest therein, save and except as against the estate of the party of the first part after his death and only to the amount of the respective shares in the one-half of said community property as determined by such inventory, and that nothing herein contained shall be deemed to in anywise give said heirs of the party of the second part, any right or claim thereto, until after the death of the party of the first part;

"That said share of the party of the second party in the community property shall be paid to the following named persons in equal shares and in case of the death of any thereof, same shall go to the child or children of such heirs, if any.

"If any of said heirs shall die without issue, then said shares shall be divided among the remaining heirs or the child or children of any of them that are deceased."

Then follows the names and addresses of the heirs, and the signatures of the parties and witnesses.

The amended complaint then sets forth the description of what is alleged to have

been accumulated by the parties as community property up to the time of the death of Agnes L. Sanford; and further alleges that, following the death of Agnes L. Sanford, Frank Sanford did not have an inventory made of the property fixing the fair market value thereof as required by the agreement; that he probated the estate of Agnes L. Sanford; that Frank Sanford died September 10, 1948, and that his will, contrary to the agreement, did not contain any provision willing to the heirs of Agnes L. Sanford her half of the community property, retained by him after her death, but did will all of the estate to his sons and daughters, the defendants herein; that the property comprising the estate of Frank Sanford contains the plaintiffs' share of their mother's estate, which, under the agreement, was to have been willed to them by Frank Sanford.

The prayer is for a decree declaring the plaintiffs to be the owners of and entitled to distribution of their mother's half of the community property as determined by the agreement, and that the defendants be required to hold the same in trust for, and to transfer the same to, the plaintiffs. The defendants' general demurrer was sustained and the action dismissed.

The demurrer was sustained on two grounds: First, that the complaint fails to allege a compliance with section 15-604 I.C. Second, that the contract is not one which could be enforced by specific performance. These are the propositions which are presented in the briefs of counsel.

Our claims statutes provide:

"All claims arising upon contracts, whether the same be due, not due or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever: * * *." Sec. 15-604, I.C.

"No holder of any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor or administrator, * * *." Sec. 15-611, I.C. To state a cause of action upon such a claim, the complaint must allege that the claim was presented to the executor or administrator, within the time allowed. Flynn v. Driscoll, 38 Idaho 545, 223 P. 524, 34 A.L.R. 352; Wormward v. Brown, 50 Idaho 125, 294 P. 331.

Here the complaint contains no such allegation and the question then arises as to whether or not the action is based upon a "claim" within the meaning of the statute. As early as 1886 this court held that the term, "claim" does not include causes of action purely equitable, and in which purely equitable relief is sought. Toulouse v. Burkett, 2 Idaho 184, 10 P. 26. In that case the action was brought to foreclose a vendor's lien. The court quoted from Fallon v. Butler, 21 Cal. 24, 81 Am. Dec. 140: "The term 'claims' in the probate act only has reference to such debts or demands against the decedent as might have

been enforced in his lifetime by personal actions for the recovery of money, and upon which only a money judgment could have been rendered." Later, in Martin v. Smith, 33 Idaho 692, 197 P. 823, it was held that an action against an administrator to recover a trust fund is not an action upon a claim against the estate, and that the claims statute does not apply. Also, Kite v. Eckley, 48 Idaho 454, 282 P. 868.

The action here brought is generally regarded as one in equity. But, since equity cannot compel the making of a will, it will grant relief, in a proper case, "in the nature of specific performance" or "quasi-specific performance", to avoid a fraud or injustice to the promisee. Bank of California, National Ass'n v. Superior Court, 16 Cal.2d 516, 106 P.2d 879; Page on Wills, Lifetime Ed., sec. 1736. The action is against the distributee, personally. It seeks to make him a trustee, of the estate coming into his hands, for the benefit of the plaintiff. Thus, it is not an action or claim against the estate. Bank of California, National Ass'n v. Superior Court, supra. It has been held that the executor or administrator is not a necessary party, unless some special relief is sought against him. McCabe v. Healy, 138 Cal. 81, 70 P. 1008; Furman v. Craine, 18 Cal.App. 41, 121 P. 1007; Swingley v. Daniels, 123 Wash. 409, 212 P. 729. On the contrary, if the cause were based upon a "claim" within the statute, the action must be brought against the executor or administrator. Sec. 15–609, I.C. What is here said is intended only to draw a distinction between a "creditor" and one asserting the rights of a "distributee". It is not intended to infer that the executrix is not a necessary party in this case. If the property, or any part of it, is still in the hands of the executrix, and the plaintiffs seek to there impress it with a trust before distribution, then of course she would be a necessary party.

Moreover, in this case the cause of action is not founded upon a claim which could have been reduced to a money judgment against the testator in his lifetime. It does not appear that he repudiated the contract while Mrs. Sanford was alive. After her death he could not do so. The contract was not breached until he died without leaving a will containing the bequests agreed upon. Sec. 15–803, I. C. Burns v. Smith, 21 Mont. 251, 53 P. 742; Casady v. Scott, 40 Idaho 137, 237 P. 415; Braden v. Neal, 132 Kan. 387, 295 P. 678; Page on Wills, Lifetime Ed., sec. 1726.

The law requires the debts of the estate, that is, claims, which have been allowed or established by judgment, to be paid before any distribution is made among heirs, legatees or others persons entitled thereto as distributees. Secs. 15–1201, 15–1202, 15–1132, 15–1133, I.C. An important distinction is made between creditors and distributees. The creditor is preferred. The distributee is required to suffer the loss if the estate is insufficient to pay all. Secs. 15–729, 15–730, 15–1128, I.C. The plaintiffs are not entitled to the preference given credit-

ors, nor to be classified or regarded as creditors of the estate.

■ We conclude that plaintiffs were not required to present their claim to the executrix. Furman v. Craine, 18 Cal.App. 41, 121 P. 1007; Oles v. Wilson, 57 Colo. 246, 141 P. 489; Casady v. Scott, 40 Idaho 137, 237 P. 415; McCullough v. McCullough, 153 Wash. 625, 280 P. 70; Erwin v. Mark, 105 Mont. 361, 73 P.2d 537, 113 A.L.R. 1064; Brooks v. Yarbrough, 10 Cir., 37 F. 2d 527; Page on Wills, Lifetime Ed., sec. 1756.

■■ We come now to the second question presented. Is the contract one which equity should enforce? Respondents urge a want of consideration for the legacies promised. It is conceded that Agnes L. Sanford had the right to dispose of her half of the community property by will. It is apparent from the contract that she wanted her heirs, named therein, to have that property. It follows that she would have willed it to them except for the contract. Had she made such a will, her heirs would have taken the property immediately upon her death. But the contract recites that she desired her husband to "have the right to the use of her one-half of the community property for the remainder of his life, subject, however, to the terms and conditions herein contained,". Respondents point out that the contract does not contain an express promise on her part not to make a will. But by the contract she agrees that on her death title to all the community property shall vest in her husband, and that her heirs shall have no "right or claim thereto, until after" his death. Clearly, if she had left a will giving her half of the community property to her heirs upon her death, she would have violated her agreement. Hence, her promise not to do so is necessarily implied. The right to will her half of the property was a valuable right. She agreed to forego that right, and fully performed that agreement. He probated her estate and received all of the benefits of her forebearance. The consideration is sufficient. Braden v. Neal, 132 Kan. 387, 295 P. 678. The objection that the consideration, promised by decedent, does not go to Mrs. Sanford, to whom the promise was made, but is claimed by strangers to the contract, is no grounds for objection in this state. Sec. 29–102, I.C. Knight v. Fox Caldwell Theatres, 70 Idaho 148, 212 P.2d 1027; 4 Page on Wills, Lifetime Ed., sec. 1723.

■ Respondents also urge that the contract lacks mutuality. Apparently, the contention is that Frank Sanford could not have compelled performance of Mrs. Sanford's promise not to make a will. Assuming this proposition to be correct, it involves only the mutuality of remedy, and Mrs. Sanford, having fully performed, the objection is no longer tenable. Anderson v. Anderson, 75 Kan. 117, 88 P. 743, 10 L.R. A., N.S., 229; White v. Smith, 43 Idaho 354, 253 P. 849; Robinson v. Haynes, 147 Okl. 95, 294 P. 803; Braden v. Neal, 132 Kan. 387, 295 P. 678; Cummings v. Sher-

man, 16 Wash.2d 88, 132 P.2d 998; Page on Wills, Lifetime Ed., sec. 1742.

It is also urged that since that which plaintiffs seek to recover, is a sum of money determined in the manner provided for in the agreement, they have an adequate remedy at law, and for that reason, are not entitled to maintain an action in equity. The fact that the promised bequest is a sum certain, or ascertainable, in money does not appear to be a controlling factor. Erwin v. Mark, 105 Mont. 361, 73 P.2d 537, 113 A.L.R. 1064; Oles v. Wilson, 57 Colo. 246, 141 P. 489. The district court can grant relief either in equity, or at law, or both in the same action. Art. 5, sec. 20, Const. Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351. The real question is whether a resort to equity powers will be necessary to give complete relief. In order to determine the amount of the bequests, it may be necessary to have an accounting of the community property existing at the date of Mrs. Sanford's death. It may be necessary to impress a trust upon the property which defendants receive from the estate, and to compel them to account for such property and pay the same over to plaintiffs to the extent of their respective claims. Such complete relief could not be had in a court of law. 1 C.J.S., Accounting, §§ 14, 16, 17, 18, 22, 24; 65 C.J., Trusts, sec. 925; 1 Am. Jur., Accounts and Accounting, secs. 51, 52; 54 Am.Jur., Trusts, secs. 218, 565; Harvey v. Deseret Sheep Co., 40 Idaho 450, 234 P. 146; Reid v. Keator, 55 Idaho 172, 39 P.2d 926.

Some of the cases cited by respondents uphold the discretionary power of the trial court to deny equitable relief on other grounds than those we have specifically discussed. Such relief will be denied; where the proof does not establish the contract with the required certainty; or where the contract is not complete; or is uncertain or ambiguous; or where it is unfair or unconscionable; or where the rights of innocent third parties have intervened. Here, however, so far as the record now shows, none of these objections can be made against the contract pleaded, and its enforcement appears to be in harmony with equity and justice.

The following additional authorities support our conclusion that the demurrer should have been overruled. Stevens v. Myers, 91 Or. 114, 177 P. 37, 2 A.L.R. 1155; Snuffer v. Westbrook, 134 Kan. 793, 8 P.2d 950; Notten v. Mensing, 3 Cal.2d 469, 45 P.2d 198; In re Doerfer's Estate, 100 Colo. 304, 67 P.2d 492; In re Rath's Estate, 10 Cal.2d 399, 75 P.2d 509, 115 A.L.R. 836; Brown v. Webster, 90 Neb. 591, 134 N.W. 185, 37 L.R.A., N.S., 1196; Torgerson v. Hauge, 34 N.D. 646, 159 N.W. 6, 3 A.L.R. 164; Smith v. Thompson, 250 Mich. 302, 230 N.W. 156, 73 A.L.R. 1389, Annotation 1395; Bedal v. Johnson, 37 Idaho 359, 218 P. 641.

The case of Andrews v. Aikens, 44 Idaho 797, 260 P. 423, 69 A.L.R. 8, is not in point. There the consideration for the promise to

devise was services rendered and to be rendered to deceased during his lifetime. No care of an intimate personal nature was required. The court held that the value of such service could readily be ascertained in money. Therefore, the plaintiff had an adequate remedy at law. Here the law could not readily fix the value of the use of Mrs. Sanford's half of the community property during the remainder of Mr. Sanford's life. Nor could it fix a value on what she parted with: the right to make a will, and to live the remainder of her days comforted by the thought that, to the extent of her ability, she had provided for her own. Further, in that case, as the court pointed out, the promisee could have sued and recovered for his services during the lifetime of the promisor. In this case, assuming Mr. Sanford had repudiated the contract while Mrs. Sanford was alive, she could not maintain an action for damages, because her right to make a will would have been restored. And of course these plaintiffs would have no cause of action in any event until after his death. This further points up the fact that they cannot be regarded as creditors of the estate, even though their action were treated as one at law for breach of contract.

The judgment is reversed, with direction to overrule the demurrer, and fix time for answer. Costs to appellants.

GIVENS, C. J., and PORTER, THOMAS, and KEETON, JJ., concur.