**FILED**

05/23/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 22-0524

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 97

IN THE MATTER OF THE ESTATE OF

CARL SCOTT,

    Deceased.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Sweet Grass, Cause No. DP 2019-11
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

    For Appellant Rocky Mountain Elk Foundation:

        Grant R. Kelly, Golden Triangle Law, PLLC, Fort Benton, Montana

    For Appellant Estate of Carl Scott:

        Jim Lippert, Jim Lippert Attorney at Law, P.C., Big Timber, Montana

    For Appellees David Scott Individually and as Personal Representative for
    Kenneth Scott, Deceased:

        C. Mark Hash, Therese Fox Hash, Hash, O'Brien, Biby & Murray,
        PLLP, Kalispell, Montana

                    Submitted on Briefs:  April 19, 2023

                              Decided:  May 23, 2023

Filed:

                                    _____
                                        Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     In this consolidated case, appellants Rocky Mountain Elk Foundation and the Estate of Scott appeal the August 16, 2022 Order granting the Scott Children's Motion to Strike Notice of Disallowance and the February 7, 2022 Order Denying the Personal Representative's Motion for Summary Judgment by the Sixth Judicial District Court, Sweet Grass County.[1]  We address:

> *Issue One: Whether the District Court, while sitting in probate, had subject matter jurisdiction to strike the Estate's Notice of Disallowance.*

> *Issue Two: Whether the District Court erred by ruling on the Personal Representative's Motion for Summary Judgment.*

¶2     We reverse and vacate the District Court's orders on both issues for lack of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In 1976 Carl Scott and his wife divorced.  As part of the divorce, they agreed to a Separation and Property Settlement Agreement in which Scott stated that he would hold the "equity in the farm near Polson, Montana," for his two sons and would "arrange to transfer that equity or its equivalent value to the two younger boys at such time when, in his judgment, they have reached a sufficient level of maturity."  The District Court adopted the Separation and Property Settlement Agreement into the final Divorce Dissolution Decree.

---

[1] On March 1, 2023, this Court granted the Rocky Mountain Elk Foundation's Motion to Consolidate Cause Nos. DA 22-0524 and DA 22-0525.

¶4 Two years later, they agreed to modify the Divorce Dissolution Decree because Scott's income decreased. In an affidavit, Scott stated that he was losing income, in part, because the lessees of the farm were exercising their option to purchase and "under the terms of the Property Settlement Agreement between the parties, the proceeds of the sale go to the two younger children."

¶5 In 2019 Scott died and devised his entire estate to the Rocky Mountain Elk Foundation (RMEF). Before his death, Scott did not determine that his sons were "sufficiently mature" and never transferred any of his equity in the farm to them. Following the publication of a Notice to Creditors, David Scott, on behalf of himself and the Estate of his deceased brother Kenneth Scott, filed a creditor claim against the Estate for their equity in the farm near Polson.

¶6 The personal representative of the Estate filed a Motion for Summary Judgment, and RMEF, as the Estate's sole beneficiary, filed a response in support of the motion. The District Court denied the motion and ruled on the merits of the case. It rejected the Estate's arguments that the statute of limitations or the common-law doctrine of laches barred the claims; it concluded that the Scott Children had a vested interest in the farm's equity; and it held that it was the Estate's obligation to disburse the funds to the children.[2]

¶7 A couple of months after the District Court issued its judgment, the Estate issued a Notice of Disallowance for the Scott Children's claims. Relying on *In re Estate of Cooney*, 2019 MT 293, 398 Mont. 166, 454 P.3d 1190, it contended that the Scott Children's claims

---

[2] RMEF appealed the Order denying summary judgment in Cause No. DA 22-0524.

were equitable, and the District Court, while sitting in probate, did not have subject matter jurisdiction. In light of *Cooney*, the Estate asserted the District Court's judgment ordering the Estate to disburse the funds to the Scott Children was void.

¶8 The Scott Children filed a Motion to Strike the Notice of Disallowance, and the District Court granted the motion. The District Court reasoned that *Cooney* "does not operate to preclude the [Scott Children's] Creditors' claims herein, nor the jurisdiction of this probate court to address them" and concluded that the "Estate has advanced no legal basis supporting its effort to change the allowances to disallowances."

## STANDARDS OF REVIEW

¶9 We review de novo whether a district court has subject matter jurisdiction. *Cooney*, ¶ 4. A court's decision to assert subject matter jurisdiction is a conclusion of law we review for correctness. *Cooney*, ¶ 4.

## DISCUSSION

*Issue One: Whether the District Court, while sitting in probate, had subject matter jurisdiction to strike the Estate's Notice of Disallowance.*

¶10 A district court sitting in probate has limited subject matter jurisdiction. Section 72-1-202, MCA. It may only preside over certain types of cases, and it may not "hear or determine any matters other than those under the purview of the statute." *Haugen v. Haugen*, 2008 MT 304, ¶ 9, 346 Mont. 1, 192 P.3d 1132 (citing *In re Graff's Estate*, 119 Mont. 311, 316-17, 174 P.2d 216, 218 (1946)). Pursuant to § 72-1-202(1)(a), MCA, the types of cases it may hear include matters related to "estates of decedents, including

4

construction of wills and determination of heirs and successors of decedents, and estates of protected persons." Creditor claims are considered claims related to the estate and are within a probate court's subject matter jurisdiction. *Cooney*, ¶ 12.

¶11 A probate court does not have subject matter jurisdiction over equitable claims arising from a breach of contract. *Cooney*, ¶ 13. An equitable claim is distinct from a creditor claim because an equitable claim is a "right or interest in the estate, an equitable ownership [] after the claims against the estate have been allowed and paid," whereas a creditor claim is "a demand against the estate which must be paid or satisfied in advance of distribution." *Erwin v. Mark*, 105 Mont. 361, 372, 73 P.2d 537, 540 (1937). This difference is consequential because it materially impacts how a decedent's real and personal property is ultimately divided and distributed. To treat them the same would "destroy all distinction between creditors of the estate, on the one hand, and those entitled as distributees [], after the payment of its debts, on the other." *Erwin*, 105 Mont. at 372, 73 P.2d at 540.

¶12 We recently examined how to determine whether a claim is equitable. In *Cooney*, John Cooney and his ex-wife agreed to a Separation and Property Settlement Agreement as part of their divorce. *Cooney*, ¶ 2. The agreement stated that when Cooney died the remainder of his ranch property "would be distributed to their daughters . . . and any other children . . . in equal shares to share and share alike," otherwise known as a "succession contract." *Cooney*, ¶ 2 (internal quotations omitted). Despite the Separation and Property Settlement Agreement, Cooney's final Will did not devise any of his ranch property to his

5

daughters. *Cooney*, ¶ 3. Cooney's daughters moved to invalidate the portions of the Will that contradicted the agreement. *Cooney*, ¶ 3. The District Court denied the motion because it did not have subject matter jurisdiction over equitable claims while it sat in probate. *Cooney*, ¶ 3.

¶13 We affirmed the District Court's ruling, concluding that the claims were equitable because Cooney's Daughters were seeking specific performance of the Separation Agreement. "The Daughters seek not a construction of the will or a determination of heirs and successors, § 72-1-202, MCA, but a judgment to enforce a contract the decedent made during his lifetime to dispose of his property in a certain way." *Cooney*, ¶ 13 (internal quotations omitted). We concluded, "the Daughters, as third-party beneficiaries to the contract, have rights or interests in the estate—in other words, a claim to equitable ownership." *Cooney*, ¶ 13.

¶14 The Scott Children argue that Scott's agreement to "transfer his equity" in the farm is not a term of a contract, but a debt he incurred during his lifetime. They identify the language in the 1976 Property Settlement Agreement, his statements in his affidavit which indicated a reliance on transferring the equity to his sons, and the fact that he never denied this obligation during his lifetime, as dispositive evidence that Scott intended to transfer the equity to his sons. Because he failed to do so before he died, they contend that, like any other creditor, they are entitled to file a claim against the Estate, and the District Court sitting in probate has subject matter jurisdiction.

¶15 To distinguish *Cooney*, they argue that *Cooney*'s holding relied on the presence of a succession contract to devise real property. But in this case, "there is no contractual obligation to draft a will in the future to transfer real property to heirs; no demand to transfer real property contrary to a Will; nor is there a trustee to hold real property for the ultimate devisee." They summarily reiterate that they are not seeking specific performance of a contract, rather they are "simply seeking payment of an obligation incurred by [Scott] during his lifetime. Where [Scott] failed to fulfill that obligation . . . it becomes an obligation of [Scott's] Estate."

¶16 This case is materially indistinguishable from *Cooney*. As in *Cooney*, Scott agreed to a Separation and Property Settlement Agreement in which Scott stated he would give property to his children. Scott never completed the agreement before he died, and now the Scott Children, like the Daughters in *Cooney*, seek specific performance of his agreement. They assert that they own the equity in the farm and request a judgment to enforce the contract by requiring the Estate to satisfy Scott's part of the agreement and give them the equity. *Cooney*, ¶ 13. Although the Scott Children insist otherwise, this is a prototypical case of an equitable claim, and the District Court, while sitting in probate, does not have subject matter jurisdiction.

¶17 Although *Cooney* involved a succession contract, the key issue was whether the Daughters were bringing equitable claims to a probate proceeding. To answer that question, this Court explained that the Separation Agreement was a prior contract and the Daughters were seeking specific performance of that contract. The Scotts' Property

7

Settlement Agreement is substantially similar in its terms because it required Scott "to dispose of his property in a certain way." *Cooney*, ¶ 13; *see Erwin*, 105 Mont. at 369-70, 73 P.2d at 539. Equitable claims—seeking enforcement of a contract right—are outside a probate court's limited subject matter jurisdiction. *Cooney*, ¶¶ 12-13.

¶18 The Scott Children also argue that the Notice of Disallowance was improper because "the district court determined that *Cooney* was inapplicable to the case at bar; thus, the Estate then had no legal basis on which to change a statutorily deemed allowance of a claim to disallowance." Having concluded that *Cooney* is applicable to this case and the District Court had no subject matter jurisdiction, we likewise conclude that the Estate did, in fact, have a legal basis to issue its Notice of Disallowance.

> *Issue Two: Whether the District Court erred by ruling on the Personal Representative's Motion for Summary Judgment.*

¶19 Because the District Court did not have subject matter jurisdiction over the Scott Children's equitable claims, it accordingly erred by ruling on the Personal Representative's Motion for Summary Judgment.

**CONCLUSION**

¶20 We reverse and vacate the District Court's grant of the Motion to Strike the Notice of Disallowance and the District Court's denial of the Motion for Summary Judgment for lack of subject matter jurisdiction. We remand to the District Court for further proceedings consistent with this opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON