Anne Henson, Appellee, v. Anna Neumann, Appellant.

Gen. No. 38,774.

Opinion filed June 29, 1936.

Rehearing denied July 10, 1936.

HUBBARD, BAKER & RICE, of Chicago, for certain appellant.

G. A. BURESH, of Chicago, for certain other appellant.

WARD H. HARRIS and CHANNING L. SENTZ, both of Chicago, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff's amended complaint asked for an accounting from the defendant, her mother, and also sought to recover an amount claimed to be due because of an anticipatory breach of a contract; answer was filed and the case was referred to a master in chancery who heard evidence and reported his conclusions, recommending a decree in favor of plaintiff; objections and exceptions were filed but the decree was entered, and defendant appeals.

The property involved consists of an estate left by the husband of defendant who died intestate, leaving his widow and three minor children, Alma, Anna (subsequently married, now Anne Henson, plaintiff) and Johanna (now Louise Regel) his only heirs at law. Plaintiff asserts that when her father's estate was closed it was agreed between her mother and the children that the use of the entire property should be left with the defendant upon her promise that at her death it would be distributed equally among the three children. Defendant asserts that when the estate was closed the children made an absolute and unconditional gift of the property to her. At the hearing before the master she testified there was $26,000 left in the estate.

The master found that on March 8, 1900, the defendant, Anna Neumann, was duly appointed guardian of the estate of Alma, Anna and Johanna Neumann in the probate court of Cook county; that this estate consisted of items of real and personal property which the minors had inherited from their father, John Neumann; that the first report of the defendant, as guardian, was filed in 1904, and no other report was filed until the estate was closed February 23, 1921, although the youngest of the heirs (Johanna, now Mrs. Louise

Regel) had attained her majority on September 24, 1915.

There is some conflict in the evidence as to what took place upon the closing of the estate. Plaintiff testified that she was 18 years old on March 6, 1914; that her mother and her two sisters had a conversation with reference to the distribution of the estate; that the girls had signed receipts for their share, and thereupon the mother said, "If each one of you girls take your share as the court has divided it, it won't leave me enough money to live on and to pay all the expenses"; that plaintiff then said that inasmuch as all the girls had good jobs they would let defendant have the use of the property for the time being, and her mother said that if that were done, then, in the event of her death the children would share and share alike in her estate. Some question arose between the girls as to certain differences in the final account, to which the mother replied again that at the time of her death she would see to it that the property would be divided equally among the children. Plaintiff testified that whenever her mother mentioned anything about the estate she always said the children were to share equally in the event of her death.

Alma Neumann, one of the daughters, testified that when the attorney who represented them in the closing of the estate asked the children what they wanted to do about the property, she told him they wanted to give it to their mother; she also testified she never received any money at this time and that no money or securities were exhibited or offered to them; she also testified that her mother said a number of times that upon her death her estate was to be divided equally among the three children. Louise Regel, another daughter, testified that when the estate was closed the children were asked what they wanted done with their property and that they replied they wished to give it to their mother. Defendant testified as to what took place in the probate

court. Plaintiff denied that in the probate court she had said she wanted to give her share of the father's estate to defendant.

The master found that when the estate was closed in 1921 the defendant did not present or bring into court any securities or other papers evidencing rights in and to the property comprising the minors' estate; that no moneys were produced in court and that none of said wards received any funds or properties from the guardian as her distributive share and none of the wards received any of the sums of money described in the final account. The master found that each of the children allowed the defendant to continue in possession of the moneys representing their distributive shares, to have and enjoy the use thereof as her individual property; that the transaction in which plaintiff and her sisters allowed said property to remain with defendant was consummated in an informal manner and without any writing evidencing the same; that plaintiff was induced to allow the use of her distributive share by her mother by reason and in consideration of defendant's promise to cause her estate to be divided equally among her daughters at her death, and that from 1921 until July, 1933, the defendant from time to time stated and assured her daughters that she would cause her estate to be divided equally among her daughters at her death.

We hold that the evidence sustains the report of the master that plaintiff did not give her share of the estate to defendant, and that plaintiff was induced to allow the use of her distributive share by the defendant in consideration of her mother's promise to cause the estate to be divided equally at her death. It is competent for a person to make a valid agreement binding himself to make a particular disposition of his property by last will and testament. *Austin v. Kuehn,* 211 Ill. 113. We therefore affirm that part of the decree which

approves and confirms the finding of the master that there was a valid agreement between the plaintiff and the defendant whereby plaintiff permitted the defendant the use of plaintiff's distributive share upon the promise of the defendant to cause her estate to be divided equally among her daughters at her death.

Plaintiff also alleges and sought to prove that there was an anticipatory breach of this contract which gives her the right to an immediate action for damages. The master found that plaintiff was married to Ernest D. Henson on October 22, 1930; that plaintiff, with her husband, resided in the same apartment with defendant, and that from March, 1932, until July, 1933, friction and misunderstanding arose between plaintiff and defendant. The master found that in July, 1933, in the course of a heated discussion between them, plaintiff asserted that her distributive share of the estate still belonged to her, and that her mother replied that it was her own money "and I (plaintiff) had nothing coming from her."

Defendant in her answer asserted that the entire property belonged to her and that she owed plaintiff nothing and was under no duty to account to the plaintiff. Defendant gave testimony indicating that in 1933 the relations between herself and plaintiff were quite hostile. There was evidence indicating that the husband of plaintiff was an active cause in creating ill feeling between plaintiff and her mother.

The evidence, however, fails to show that the defendant has breached her agreement to leave the property to the girls in equal shares upon her death. There was an abundance of evidence that she was disposed to treat her children fairly and impartially. Louise Regel testified that her mother never showed any partiality among the girls but that all were treated alike and all treated "fair and square." Plaintiff herself testified that as late as December, 1933, her mother told her that

when she made a will she would treat all of the children alike. Defendant, testifying on December 4, 1934, before the master, stated that she had no reason ''at this time to favor one and disfavor the other.''

The master found that the statements made by defendant that plaintiff could not expect to receive anything at defendant's death were made under ''considerable provocation and passion of argument''; that the defendant conceded that such declarations were made in the heat of discussion; defendant introduced evidence that she had not made any will disposing of her estate or had shown any partiality toward one daughter over another, and in the event of her death the same would be divided equally among her daughters in accordance with her previous promises from time to time. We hold that the evidence did not justify the finding of the master that the attitude of defendant amounts to an anticipatory breach of the contract, and in this respect the chancellor should have sustained exceptions to the master's report.

A question of law is presented by respective counsel as to whether plaintiff can now maintain her action on the ground of an alleged anticipatory breach of such a contract as we find here. In 13 Corpus Juris, sec. 728, p. 655, it is stated that the doctrine of anticipatory breach of contract applies only to contracts containing interdependent obligations and does not apply where the contract is executory only in behalf of the other party. In the Restatement of the Law on Contracts, par. 318e, p. 477, the author says: ''The doctrine of anticipatory breach is not extended to unilateral contracts unless the promisor's duty is conditional on some future performance by the promisee. It is immaterial whether the contract was originally thus unconditionally unilateral or has become so by the performance of one party. In neither case can a breach arise before the time fixed in the contract for some performance. There must be some dependency of performances in

order to make anticipatory breach possible.'' In *Pittman v. Pittman,* 110 Ky. 306, 61 S. W. 461, plaintiff sued upon a contract whereby the defendant had agreed to make the plaintiff one of his heirs at law, giving him a child's share of his estate in consideration that plaintiff would work a specified number of years; plaintiff alleged he had fully performed when defendant repudiated the contract. The court held that while plaintiff might recover for the value of his services, yet he could not enforce specific performance of the alleged contract as the time had not yet arrived for this, saying, ''The time to demand its enforcement is upon the death of the'' promisor. In *Warden v. Hinds,* 163 Fed. 201, plaintiff sued upon a written contract alleging that he had performed certain services for defendant upon the promise that defendant would leave her a legacy upon his death; plaintiff alleged performance and her discharge without cause; she brought suit for the amount of the promised legacy and recovered. The court reversed the judgment of the lower court upon the ground that such contracts are susceptible of enforcement only after the death of the testator by bill in equity for specific performance. The opinion discusses the case of *Johnson v. Hubbell,* 10 N. J. Eq. 332, which involved a bill for specific performance of a father's agreement to leave plaintiff certain property by will; the father died leaving a will by which he excluded plaintiff from all participation in his estate. The court sustained the plaintiff, but said:

''It is obvious that an agreement to make a certain disposition of property by devise is one which, strictly speaking, will not support an action in the party's lifetime, because any testamentary instrument is by its nature revocable. No one can tell what it will be until the maker dies, and he has his whole life in which to perform the covenants.''

The opinion in the *Warden* case concludes: ''It is true there is authority for the position that in some

instances under an agreement to bequeath property the person to whom the bequest is to be made may in the lifetime of the proposed testator, in order to prevent the loss of the property through extravagance or other misconduct of the latter, file a bill *quia timet* on the equity side of the docket to have such testator declared a trustee to the extent of the claim; but the elementary writers and the judicial decisions all seem to be in harmony in support of the proposition that upon an agreement to make a will an action at law does not lie during the lifetime of the proposed testator. It would seem that the fact that bills *quia timet* based upon contracts for the disposition of property by will are entertained, as stated above, in the lifetime of the proposed testator, gives additional strength to the position that an action to enforce the contract itself cannot be maintained until after his death.''

*Van Duyne v. Vreeland,* 12 N. J. Eq. 142, involved an agreement whereby defendant would give plaintiff all his property at his death, and all the conditions had been performed by plaintiff. The court upheld a bill to prevent the defeat of plaintiff's rights, and commenting upon the question of specific performance held that he was not entitled to this during the lifetime of defendant. There are cases sustaining bills to prevent waste, under similar circumstances, where it is shown that the waste was purposely contemplated to defeat the undertaking of the promisor. We find no case enforcing specific performance, during the life of the promisor, of a promise to leave a devise by will.

*Carter v. Witherspoon,* 156 Miss. 597, cited by plaintiff, held that plaintiff might recover the value of services rendered to defendant, although defendant had served notice that she did not intend to comply with her promise to bequeath her property to plaintiff. In *Tipple v. Tipple,* 177 N. Y. S. 813, it was likewise held, under similar circumstances, that plaintiff might recover the value of the services rendered. In *Wold v.*

*Wold,* 138 Minn. 409, where the defendant had repudiated his agreement to leave plaintiff his property upon his death, the court entered a decree.awarding to plaintiff the rights of an heir but did not decree that plaintiff should have the property before the death of the promisor. In none of these cases do we find a decree awarding property to the plaintiff before the death of the promisor.

We find cases fixing the rights of the plaintiffs under such circumstances, and that is what we have done in this opinion by holding that there was a valid agreement on the part of the defendant that plaintiff is entitled to one-third of the estate upon her death. But we also hold that plaintiff is not entitled to pursue an action for specific performance at the present time for the reason that the evidence fails to prove an anticipatory breach, and furthermore, that in law plaintiff is not entitled at present to the remedy she seeks.

Defendant makes the point that the claim is barred by the statute of limitations, saying that the plaintiff is relying upon the agreement made in 1915. The statute of limitations cannot run until the agreement to devise the property is broken. Manifestly plaintiff could have no right to commence these proceedings until the contract was broken by the defendant which, plaintiff asserts, was in July, 1933. However, this is a moot question as we have held that there was no breach of the contract.

For the reasons above indicated the decree is affirmed in part and reversed in part, and the cause is remanded; costs to be divided equally between the parties.

*Affirmed in part, reversed in part and remanded.*

MATCHETT, P. J., and O'CONNOR, J., concur.