Leo Alan NEAL III, an infant by Kathryn Miller, his mother and his guardian; Kathryn Neal Miller, an individual; and Kathryn Neal Miller (same person as Kathryn Miller), Administratrix of the Estate of Leo Alan Neal II, deceased, Appellants,

v.

Frank Parkinson NEAL, as the Executor of the Estate of Helen Parkinson Neal, deceased; The Parkinson-Neal Motor Company, now known as the Day-Neal Motor Company, a partnership; The Alan Investment Company, a partnership; The Neal Farm Equipment Company, a partnership; The Foster Ranch, a partnership; Frank Parkinson Neal, individually; Frank Parkinson Neal, as a member of the Parkinson-Neal Motor Company, now known as the Day-Neal Motor Company, a partnership; Earl Day, individually; Earl Day as a member of the Parkinson-Neal Motor Company, now known as the Day-Neal Motor Company, a partnership; Ruth Adaline Foster, individually; Ruth Adaline Foster, as a member of the Neal Farm Equipment Company, a partnership; Janice Helen Neal Stephens, individually; Janice Helen Neal Stephens as a member of the Neal Farm Equipment Company, a partnership; Ruth Adaline Foster as a member of Foster Ranch, a partnership; William Foster, individually; William Foster as a member of the Foster Ranch, a partnership, Appellees.

No. 5589.

United States Court of Appeals
Tenth Circuit.

Nov. 6, 1957.

Rehearing Denied Jan. 15, 1958.

Luther Bohanon, Oklahoma City, Okl.
(Bert Barefoot, Jr., and Leon S. Hirsh,
Oklahoma City, Okl., on the brief), for
appellants.

B. H. Carey, Oklahoma City, Okl. (Jere G. Crowley, Enid, Okl., and Charles R. Nesbitt, Oklahoma City, Okl., on the brief), for appellees.

Before BRATTON, Chief Judge, and HUXMAN and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Leo Alan Neal III, who sues by his mother and guardian, claims that he has not received his distributive shares of the estates of his grandmother, his grandfather and his great grandfather.[1] By amendment to the complaint, the mother and guardian, Kathryn Neal Miller, was joined as a plaintiff in her individual capacity and as administratrix of the estate of her deceased husband, Leo Alan Neal II. The defendants below were Frank Parkinson Neal, an uncle of Leo Alan Neal III, who was sued in his individual capacity and as executor of the estate of Helen Parkinson Neal, the paternal grandmother of Leo Alan Neal III, and as a member of certain partnerships; two aunts, Ruth Adaline Neal Foster and Janice Helen Neal Stephens, individually and as members of certain partnerships; the partnership entities, and certain individuals who were members of those partnerships in addition to the uncle and aunts named.

Four distinct claims are asserted. The first claim relates to the estate of the grandmother, Helen Parkinson Neal. The second, third and fourth claims relate to the estate of the grandfather, L. A. Neal.

The controversy begins with the estate of the great grandfather, Frank A. Parkinson, who died testate in 1929 leaving as his sole heirs his widow, Adda H. Parkinson, and his daughter, Helen Parkinson Neal, the wife of L. A. Neal. L. A. Neal and Helen Parkinson Neal had four children, Leo Alan II, the father of Leo Alan III, and the defendants Frank Parkinson Neal, Ruth Adaline

Neal Foster, and Janice Helen Neal Stephens.

In his will Frank A. Parkinson made certain specific bequests. Paragraph 5 thereof provided that an investment which Parkinson had made for his wife in the Parkinson-Neal Motor Company be added to his estate and that one-fourth of the estate remaining after the deduction of the specific bequests be set aside for the use of his wife with the provision that if at her death any portion of the bequest to her remained, it should revert to his estate. Paragraph 6 bequeathed one-fourth of the estate to his daughter, Helen Parkinson Neal. Paragraph 7 required that the balance of the estate be held in trust "to be divided equally among the children born to my daughter, Helen Parkinson Neal."

The will was offered for probate in the County Court of Garfield County, Oklahoma. The widow renounced the will and elected to take under the Oklahoma law of inheritance.[2] In the final decree settling the estate the county court ruled that the widow's election so disarranged the testamentary scheme as to make it impossible to carry the will of the deceased into effect and make distribution thereunder; that therefore the will was null and void; and that the estate must be distributed under the Oklahoma laws of inheritance.

Prior to that decree of final settlement the widow, Adda H. Parkinson, and the daughter, Helen Parkinson Neal, the sole heirs of Frank A. Parkinson, entered into a contract for the disposition of the estate. The pertinent provisions of that contract read thus:

"That all of the balance of said estate shall go to party of the second part [Helen Parkinson Neal] and party of the second part agrees that, in lieu of the provision made by the last will and testament of the said Frank A. Parkinson, deceased, for the benefit of the children of

---

1. Jurisdiction is based on diversity of citizenship. Leo Alan Neal III and Kathryn Neal Miller are citizens of Texas and the defendants are all citizens of Oklahoma.

2. 84 O.S.1951 § 44.

party of the second part, that she will execute and at all times keep in force and effect a valid last will and testament whereby she will make provision for her children, the grandchildren of the said Frank A. Parkinson, deceased, out of the property which she receives from his estate and the accumulations therefrom, and in such a manner that when said children come into their inheritance they shall understand and know that they are receiving the same as the fruits of the estate of their deceased grandfather, Frank A. Parkinson."

This contract was submitted to the county court for its approval and that court in its decree of final distribution specifically approved and confirmed the contract.[3]

Leo Alan Neal II, one of the four children of L. A. Neal and Helen Parkinson Neal, died June 2, 1945, intestate. His heirs were his widow, Kathryn Neal, and his son, Leo Alan Neal III.

L. A. Neal died testate on March 10, 1950. By his will he left one-third of his estate to his wife, Helen Parkinson Neal, and divided the remainder equally among his children. At the time of his death L. A. Neal was a partner in certain businesses. During the course of the probate proceedings in the County Court of Garfield County, Oklahoma, Helen Parkinson Neal, as executrix, received in cash the net value of L. A. Neal's interest in such businesses. By final decree entered June 25, 1951, the estate was distributed in accordance with the will, one-third to Helen Parkinson Neal (widow), one-sixth each to Frank Parkinson Neal (son), Adaline Neal Foster (daughter), Janice Helen Neal Stephens (daughter), and Leo Alan Neal III (grandson).

Helen Parkinson Neal died September 21, 1955, leaving a will dated February 9, 1953. By her will she devised certain real estate in varying shares to her son, Frank, and her daughters, Ruth and Janice. The remainder of her estate she bequeathed one-fourth each to her son, Frank, to her daughter, Ruth, and to her daughter Janice. The remaining one-fourth went to the Central National Bank of Enid, Oklahoma, in trust for her grandson, Leo Alan Neal III. She named her son, Frank Parkinson Neal, as the executor of her estate.

With this background, Leo Alan III asserts in his first claim that his grandmother, Helen Parkinson Neal, took whatever property she received from her father in trust and must account not only for the corpus but also for accumulations resulting therefrom and that he, Leo Alan III, is entitled to one-fourth of such corpus and its accumulations.[4]

The second, third and fourth claims relate to the distribution of the estate of the grandfather, L. A. Neal. The second claim attacks the settlements made of the partnership interests of L. A. Neal upon grounds which principally relate to the exclusion of certain real property from the partnerships and to the valuation of the partnerships. In connection with both the first and second claims the plaintiffs seek an accounting. The third claim pertains to certain farm property left by L. A. Neal. As to this Leo Alan III asserts that he is entitled to a one-sixth interest in the real estate, the livestock, the equipment, and the rental value. The fourth claim relates to certain stocks and bonds which Leo Alan III asserts were the property of L. A. Neal and not the property of any of various partnerships of which he was a member.

In their answer the defendants below, appellees here,[5] jointly and severally admit that certain sums were due plaintiff Leo Alan III as his distributive share of the estate of his grandfather, L. A.

3. The decree of final settlement in the estate of Frank A. Parkinson was entered on November 1, 1930.

4. Herein the appellants, plaintiffs below, will be referred to either by name or as plaintiffs.

5. Herein appellees will be referred to either by name or as defendants.

Neal, and tender the amounts with interest which they concede are due under the second, third and fourth claims.[6] They deny all liability under the first claim wherein Leo Alan III seeks to recover one-fourth of the property which Helen Parkinson Neal received from the estate of her father, Frank A. Parkinson.

At a pretrial conference the parties presented exhibits consisting of two contracts and the pertinent probate proceedings in the various estates. At that time counsel agreed that the question of liability should be determined first and that all evidence necessary to decide that question was before the court in the exhibits and admissions. The question of the right to an accounting was deferred until after the decision on liability.

In summary the trial court held that it had jurisdiction because of diversity of citizenship; that the plaintiffs had failed to show any fraud or overreaching; that there could be no recovery on the first claim; and that recoveries on the second, third and fourth claims should be the amounts tendered by defendants.

■ The foundation of the first claim is the 1929 contract between Adda H. Parkinson and Helen Parkinson Neal. This is necessarily so because the 1930 county court decree held that the election of the widow to take by inheritance nullified the will of Frank A. Parkinson. Under Oklahoma law this decree is not subject to collateral attack.[7]

■ Plaintiffs urge that the will of Frank A. Parkinson must be considered in construing and applying the contract. The argument is not persuasive. While no reason appears for the action of the county court in adopting and confirming the contract, its action in that regard is nothing more than an approval. It does not constitute the creation of any vested equitable rights in the plaintiffs. Although the contract refers to the will and recites that its purpose is to accomplish the intent of the testator the contract does not make the will a part of its terms and provisions. Indeed the contract in several important aspects differs from the will.[8] From a practical standpoint the reference in the contract to the will did nothing more than convey to the grandchildren the information that they were the recipients of the benefits which their grandfather intended them to have under his will which had been invalidated by the action of his widow.

■ The widow and daughter were not required to make a contract. When they did, they bound themselves to assure participation by the grandchildren in the estate left by the grandfather. However, the clear wording of that contract binds the daughter only to make provi-

6. The amounts of such tenders as found by the trial court were: as to second claim, $11,982.30; as to third claim, $7,033.21; as to fourth claim, $162.93.

7. 58 O.S.1951 § 632; Billingslea v. Booker, Okl., 263 P.2d 176, 181; Brownrigg v. Lyons, 205 Okl. 198, 236 P.2d 482, 484; Wells v. Helms, 10 Cir., 105 F.2d 402, 404.

8. The trial judge pertinently observed that the desire to follow the wishes of Frank A. Parkinson was not complied with when his widow, Adda, one of the parties to the contract, elected to take her share under the statutes of inheritance and thereby invalidated the will. Among the differences between the will and the contract are these: (1) The will made certain specific bequests which are not mentioned in the contract. (2) The will directed that an investment which Parkinson had made for his wife, Adda, be added to his estate and that after such addition and the deduction of the specific bequests Adda have one-fourth of the remainder for her life with the reversion after her death of any portion of the bequest then remaining to his estate. Under the contract Adda retained investments made for her and received $40,000 without any provision for reversion. (3) The will set aside to the daughter, Helen Parkinson Neal, the same one-fourth as that bequeathed to the wife, Adda, but without any provisions as to reversion. This bequest is ignored in the contract and provision is made that after payment of the $40,000 to Adda and recognition of certain unstated requests of the decedent all the balance goes to Helen for the benefit of her children.

sion for her children. It contains no reference to the surviving issue of children, if any children should predecease her.

In his ineffective will Frank A. Parkinson left his residual estate in trust "to be divided equally among the children born to my daughter, Helen Parkinson Neal." He said nothing about the issue of such children. Specifically he did not provide that a child should take the share of a parent.

The contract binds the daughter, Helen, to keep in force and effect a valid last will "whereby she will make provision for her children, the grandchildren of the said Frank A. Parkinson, deceased, out of the property which she receives from his estate and the accumulations therefrom." The contract does not make any reference to the grandchildren of Helen and does not require Helen to make *equal* provision for her children. The daughter, Helen, did all that she was required to do either under the will or the contract. By her will she made certain specific bequests and then divided the remainder of her property one-fourth each to her children, Frank, Ruth and Janice, and one-fourth to the Central National Bank of Enid, Oklahoma, in trust for Leo Alan III. There is no showing that any of the property covered by the specific bequests was received by Helen from the estate of her father or from any accumulations arising out of the estate which she received from her father. Hence, if Leo Alan III had any rights under the 1929 contract, either considered by itself or considered with reference to the will, those rights have been satisfied.

■■ Kathryn Miller may not maintain the action as administratrix of the estate of Leo Alan Neal II as he died in 1945, and any claim for breach of the 1929 contract could not have accrued until the death of Helen Parkinson Neal in October, 1955.[9] A cause of action does not survive in favor of a personal representative of a decedent unless it accrued in favor of the decedent in his lifetime.[10]

■■ The plaintiffs treat the 1929 contract as though it were a third party beneficiary contract or in the alternative a contract which had the effect of creating an express or constructive trust. So far as the third party beneficiary theory is concerned, the Oklahoma law is that a person cannot enforce in his own behalf as a third party beneficiary a contract between others unless it clearly appears that the contract was made expressly for his benefit; and the fact that he will be incidentally benefited by performance of the contract is insufficient.[11] The 1929 contract was not made for the express benefit of either plaintiff. Its terms exclude them. The contract provides that Helen Parkinson Neal make provision for her children. Leo Alan III is the grandson of Helen Parkinson Neal and Kathryn Miller is the widow of a son of Helen Parkinson Neal.

■ The contention that the 1929 contract creates a trust likewise fails because it is patently insufficient to create a trust. There is no declaration of trust, no indication of the property to be embraced within the trust, no designation of either of the plaintiffs as a beneficiary of a trust, and no declaration of the nature or quantity of the interest of the purported beneficiaries.[12]

■ Even if it be assumed that Leo Alan III is a third party beneficiary under the 1929 contract, that does not

9. Ashbauth v. Davis, 71 Idaho 150, 227 P.2d 954, 957, 32 A.L.R.2d 361; Henson v. Neumann, 286 Ill.App. 197, 3 N.E.2d 110, 113; 57 Am.Jur., Wills, § 181.

10. Krueger v. Hansen, 238 Wis. 638, 300 N.W. 474, 475; McCaa Chevrolet Co. v. Bounds, 207 Ark. 1043, 183 S.W.2d 932, 933; 1 C.J.S. Abatement and Revival § 136.

11. Hawkins v. Mattes, 171 Okl. 186, 41 P.2d 880; Electric Supply Co. v. City of Muskogee, 171 Okl. 130, 42 P.2d 140; Watson v. American Creosote Works, 184 Okl. 13, 84 P.2d 431; Traders & General Insurance Co. v. Sand Springs Home, Okl., 158 P.2d 1018.

12. See Seran v. Davis, 174 Okl. 433, 50 P.2d 662.

entitle him to any recovery under the first claim. All his grandmother, Helen Parkinson Neal, agreed to do was to "make provision for her children, the grandchildren of the said Frank A. Parkinson." An agreement to divide certain property, or even an entire estate, between various named beneficiaries without specifying the proportion each is to receive is fully complied with when all such beneficiaries are included within the provisions of the will. There is no obligation under such a contract to divide the property in any particular proportions among the beneficiaries. This has been specifically held in Oklahoma by the case of Ashley v. Ketchersid, Okl., 265 P.2d 487, 488.

Helen Parkinson Neal, as noted above, left one-fourth of her residuary estate to her grandson, Leo Alan III. Under the Oklahoma law this was a compliance with whatever contractual obligations were created for the benefit of Leo Alan III.

The second, third and fourth claims relate to the L. A. Neal estate. Specifically, the contention is that Leo Alan III did not receive his one-sixth distributive share decreed to him by the county court in its order of final settlement dated April 27, 1951. As to each of these claims the defendants have conceded that Leo Alan III has not received his one-sixth share of certain personal property left by his grandfather, L. A. Neal, and they have tendered into court as to each claim the amount which under the decree of the probate court was due to Leo Alan III, together with interest thereon.

The trial court correctly held that each of these claims constitutes a collateral attack on the final decree of the county court.[13]

The second claim attacks certain settlements made of the partnership interests of L. A. Neal. These partnership interests were appraised and sold and the proceeds accounted for by the executrix. Her activities in these regards were confirmed by the county court. There is no merit in the assertion that the county court had no power to hold that certain real estate was held by Helen Parkinson Neal and L. A. Neal as joint tenants and hence was not partnership property. While in Oklahoma a probate court may not adjudicate title to real estate other than as an incident to probate distribution, the action of the court was clearly incidental to probate distribution. If the plaintiffs desired to contest the acts of the executrix of the L. A. Neal estate, they should have done so in the estate proceedings. They may not make a collateral attack in this independent action.

In the third claim a right is asserted to a one-sixth interest in certain farm property of L. A. Neal. Leo Alan III was decreed a one-sixth interest in the realty. The defendants have tendered by their answer an amount which equals one-sixth of the value of the farm personalty as determined by the county court. Leo Alan III asserts that in addition he is entitled to one-sixth of the rental value of this property. His right in the property is as a tenant in common with the other devisees under the L. A. Neal will. The trial court held that there could be no recovery based on rental value because there was no evidence of any rents having been received by any of the other tenants in common. This accords with the Oklahoma law that it is not the duty of a cotenant to account for rents unless rents are collected.[14]

The fourth claim relates to certain stocks and bonds which plaintiffs allege were wrongfully held to be partnership assets. The county court held that with certain exceptions these stocks and bonds were partnership assets and disposed of as such. As to those which were held not to be partnership assets, the defendants have tendered an amount equal to one-sixth of the value thereof to-

13. See authorities cited in footnote 7.

14. Airington v. Airington, 79 Okl. 243, 192 P. 689, 27 A.L.R. 182.

gether with interest. This claim is patently a collateral attack upon the decree of the county court, and on the authorities already cited it cannot be maintained.

The judgment is affirmed.

### On Petition for Rehearing

In their petition for rehearing appellants assert that they have the right to make direct attacks on the decrees and orders of the Oklahoma probate court entered in the various estate proceedings involved in this case. The decision and opinion herein are not intended to be, and must not be construed as, any determination of the rights of the appellants to proceed by way of direct attack on such decrees and orders. The petition for rehearing is denied.